No. 22,768.

MATTIE GLASGOW, *Appellee*, v. SOVEREIGN CAMP OF THE WOODMEN OF THE WORLD, *Appellant*.

SYLLABUS BY THE COURT.

1. FRATERNAL BENEFIT INSURANCE — *False Statements in Application Avoid the Certificate—Chap. 226, Laws of 1907, Does Not Apply to Fraternal Benefit Insurance.* The provision of chapter 226 of the Laws of 1907, that, "No misrepresentation made in obtaining or securing a policy of insurance on the life or lives of any person or persons, citizens of this state, shall be deemed material or render the policy void unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable," does not apply to certificates issued by fraternal benefit societies.

2. SAME—*False Answers to Material Questions in Application Render Certificate Void.* Questions asked upon an application for a beneficiary certificate as to whether or not the applicant had consulted or been attended by a physician for certain named diseases, are material, and false answers given by him operate to annul the certificate, and it is further held that a finding of the jury herein that the insured had not consulted or been attended by a physician within a fixed time is contrary to the evidence.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed July 10, 1920. Reversed.

Glasgow v. Woodmen of the World.

*Edwin S. McAnany, Maurice L. Alden, Thomas M. Van Cleave,* all of Kansas City, *John T. Harding, B. F. Deatherage, D. A. Murphy,* and *Paul R. Stinson,* all of Kansas City, Mo., for the appellant.

*E. A. Enright,* of Kansas City, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.:  This appeal is brought to review trial errors and a judgment in favor of the plaintiff, based upon a beneficiary certificate issued by the defendant to the husband of plaintiff.

The certificate was issued on January 14, 1916, and the insured died on February 4, 1918.  In the application for insurance the insured made a number of representations as to his bodily health and as to whether he had consulted or been attended by physicians within a period of five years preceding his application.  These answers, it was contended, were false and such as avoided the beneficiary certificate.  It is contended that the findings and verdict of the jury are unsupported by the evidence and that the case was tried upon an erroneous theory of the law.  Defendant asserts that the case was tried and submitted to the jury upon the theory that chapter 226 of the Laws of 1907, General Statutes, 1915, §§ 5290, 5291, providing that misrepresentations of an applicant for life insurance shall not defeat the insurance policy unless the matters misrepresented contributed to the contingency or event on which the policy was to become due, applies to fraternal benefit societies.  The record does not contain all of the instructions, but the contention of defendant that the case was submitted on that theory is not denied by plaintiff, and as other parts of the record indicate that it was so submitted, the question will be considered.

The act of 1907, in title and body, refers generally to insurance on the lives of persons who are citizens of this state, and to life policies and premiums.  In its enactment the legislature did not in terms limit its application to any particular kind of life insurance, nor treat it as an amendment of any of the insurance laws.  Being general in its terms it has been held to be applicable to a policy issued by an accident insurance company which provided indemnity for loss of life by accidental

means. (*Becker v. Surety Co.,* 105 Kan. 99, 181 Pac. 549.) It does not follow from this ruling that the provision covers and applies to fraternal benefit societies. The legislative purpose and policy as to these have been declared in other legislation. Because of differences in design and nature, the legislature has placed these organizations in a class separate from insurance companies, and provided for each a distinct code of laws for their regulation and control. While benefit societies have insurance features, they are not designed to give indemnity or insurance for profit, as are insurance companies, but the theory on which they are organized is to provide mutual benefits and benevolences to members and their families with no profit in view, and the benefits and relief extended are confined to those associated together in their lodges and societies. Most of the statutory provisions regulating insurance companies are inconsistent with those governing benefit societies, and to make the distinction clear and prevent the application of the governing rules of one organization to the operations of the other, it was expressly provided in the fraternal benefit act:

". . . Such association shall be governed by this act and shall be exempt from the provisions of insurance laws of this state, and no law hereafter passed shall apply to them unless they be expressly designated therein." (Laws 1898, Special Session, ch. 23, § 1.)

This provision has been retained in the subsequent amendments of the act and is still in force. (Laws 1899, ch. 147, § 1 [Gen. Stat. 1915, § 5401]; Laws 1917, ch. 208, § 1; Laws 1919, ch. 216, § 1.) It was given consideration in *Boice v. Shepard,* 78 Kan. 308, 96 Pac. 485, where it was held that the acts relating to insurance companies had no application to fraternal benefit societies, and it was added that:

"The legislature, having separated beneficiary societies from insurance companies and made special provisions for providing and paying benefits to members, simply declared that hereafter this distinction should be maintained, and that acts relating to insurance should not be understood as applicable to beneficiary societies unless they were expressly mentioned in the act. The act in question, instead of making express reference to beneficiary societies, uses language, as we have seen, appropriate only to insurance companies, and its provisions are not in harmony with the theory of beneficiary societies." (p. 312.)

In providing for the organization and regulation of fraternal benefit societies, it was the manifest purpose of the legislature

that insurance statutes then in force· or thereafter enacted should not be applicable to benefit societies unless they were expressly included in such statutes. There is no reference to benefit societies in chapter 226 of the Laws of 1907, and nothing in the nature of the societies or the acts relating to them indicates a purpose to include them in the provision in question; and following the legislative interpretation, it must be held that this provision is not applicable to benefit societies, since it is not expressly made so by its own terms.

There remains the question whether the findings and verdict of the jury are contrary to the evidence and the law. In his application the insured represented and warranted that he was of sound bodily health and had no diseases that would tend to shorten his life, and he warranted that the answers he had made upon his application for a beneficiary certificate were full, true, and complete. The truthfulness of the answers to material questions, being a part of the warranty, was essential to the validity of the contract. Among the representations and warranties made by him was one to the effect that he had never had certain named diseases nor any kidney disease or dropsy; another, that he had never consulted or been attended by a physician during the past five years for any injury or disease, except on one occasion in 1918 when he had been attended by Doctor Lowther for chills and fever. There was testimony by Doctor Clifton that he had treated the insured in 1915 when he found his kidneys diseased, his urine heavily loaded with albumen, his condition dropsical, and that he had then informed the insured that he had Bright's disease. Furthermore, he testified that afterwards the insured applied to him for an examination preparatory to obtaining insurance with the defendant, but that he (Doctor Clifton) declined to make the examination, saying that owing to the physical condition of the insured he could not certify that he was a fit subject for insurance. The testimony of the witness is that in reply to this statement the insured remarked, "Well, if you won't examine me, I can get one that will." Another witness, Doctor Bobo, testified that the insured consulted him in 1915 as to his illness, and that the diagnosis then made by him was that the insured had cirrhosis of the liver and chronic nephritis, or Bright's disease. Doctor Bobo testified that he then informed the insured as to his con-

dition and also that his ailments were incurable. Doctor Lowther, who was mentioned in the application as having treated the insured for chills and fever, testified that the insured came to him for examination and treatment several times during 1914 and 1915, and that he found him to have an infection of the kidneys known as chronic Bright's disease, and that he communicated to Glasgow the nature of his ailments, telling him that he regarded them to be incurable.

As against this evidence there was a certificate of Doctor Davis, the physician of the Camp, given when the application was made, to the effect that the insured was in good health, free from the diseases mentioned and safely insurable. Besides this certificate, the evidence offered by plaintiff was negative in character and was mainly that of the widow of the insured, who testified that she did not know of the treatment of her husband for Bright's disease nor of his having any ailment except chills and fever. However, she did corroborate the testimony of Doctor Clifton in one respect. She testified that she called Doctor Clifton in 1915 to visit and treat her husband for an illness which she said was the result of inhaling a poisonous gas. She admitted that the doctor made an examination of his condition and prescribed certain medicine which was given to the insured. The finding that he had not consulted nor been attended professionally by Doctor Clifton was therefore contrary to the evidence of both plaintiff and defendant. It was practically admitted that there was a consultation, and while there is a dispute as to the nature of the ailment for which the doctor was called, it is conceded that he made an examination and attended the insured within the period named in the application. This is a material question to which an untruthful answer was given by the applicant. It has been held that a false answer to a material question operates to annul the insurance contract. (*Hoover v. Royal Neighbors,* 65 Kan. 616, 70 Pac. 595). In *Insurance Co. v. Brubaker,* 78 Kan. 146, 96 Pac. 62, the effect of a false answer to a like question was under consideration, and it was said:

"The question is important because if an affirmative answer be given the company may make an investigation and ascertain the exact truth regarding the cause for the consultation and the state of health it revealed or ought to have revealed. It requires no argument to show that

the action of the company may well be influenced by the answer to this question." (p. 151.)

In the finding made, the jury manifestly ignored the evidence, and this of itself is enough to overthrow the verdict returned. While the jury were at liberty to disbelieve and disregard the testimony of any witness, if they deemed it unworthy of belief, that given by the medical witnesses who stated that they had been consulted by the applicant, and had treated him for Bright's disease, was circumstantially given and has the marks of verity. It was corroborated by a witness to whom the insured admitted that he had been attended by these physicians and that they had treated him for kidney diseases. The jury had no right to disregard credible testimony merely because the plaintiff testified that she had no knowledge of such consultation and treatment. Negative testimony of that character is entitled to little, if any, weight, since the insured might have consulted the physicians and been treated by them without her knowledge. Their testimony on these questions can hardly be said to have been contradicted, and is of a very convincing character.

We place the decision, however, upon the baseless finding that the insured had not consulted or been attended by Doctor Clifton in 1915. For the error of the court in upholding the finding and verdict, the judgment is reversed, and the cause is remanded for a new trial.