No. 23,860.

(ANTON KOVAC, *Plaintiff,* v. THE SONS AND DAUGHTERS OF JUSTICE, *Defendant*), ELLEN SHANAHAN, Intervener, *Appellee,* and THE COLUMBIAN CIRCLE, Intervener, *Appellant.*

SYLLABUS BY THE COURT.

1. FRATERNAL BENEFIT INSURANCE—*Alleged False Statements in Application—Contradictory Evidence—Facts for Jury.* Upon the issue of the truth of a statement in an application for insurance that the applicant had not within five years consulted or been treated by a physician, where a doctor testifies that within that period he had attended him at his (the applicant's) home, found him to have Bright's disease, and told him and his wife of the fact, and the wife testifies that no such occurrence took place, such a contradiction of evidence is presented as to require submission to the triers of the facts.

Kovac v. Sons and Daughters of Justice.

2. SAME—*Immaterial Omission in Application for Insurance—Did Not Prevent Recovery.* Under the circumstances here presented, the fact that an applicant for insurance returned the answer "none" to a question calling for a statement of the illnesses, diseases or injuries he had had since childhood and the name of medical attendant, a recovery by the beneficiary is not prevented by proof that some five years before the application he had cut his finger and had a doctor treat it.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed November 4, 1922. Affirmed.

*J. H. Brady, T. F. Railsback,* both of Kansas City, *William H. Beckman, Albert O. Olson,* and *Charles F. Hough,* all of Chicago, for the appellant.

*James M. Meek,* of Kansas City, for the appellee.

The opinion of the court was delivered by

MASON, J.: This appeal is taken from a judgment against the Columbian Circle, a fraternal benefit association, in favor of Ellen Shanahan, upon a beneficiary certificate issued to her husband (Michael Shanahan) by the Sons and Daughters of Justice, of which the first-named association is the successor. The insured was a butcher in the employ of a packing-house company. He died of tuberculosis, June 11, 1920. The defense was that in his application he had made false representations and warranties concerning his health. The jury found specifically that the challenged statements were true. The appeal is based upon the contention that these findings were without any support in the evidence. The parties will be spoken of as the plaintiff and the defendant, these terms indicating their relations to each other, although both were in fact interveners.

1. In *Glasgow v. Woodmen of the World,* 107 Kan. 354, 191 Pac. 470, a judgment in favor of the beneficiary of a similar certificate was set aside because it involved a finding against the uncontradicted testimony of a physician that he had treated him for Bright's disease prior to his application. In the opinion it was said: "The jury had no right to disregard credible testimony merely because the plaintiff [the wife of the insured] testified that she had no knowledge of such consultation and treatment. Negative testimony of that character is entitled to little, if any, weight, since the insured might have consulted the physicians and been treated by them without her knowledge. Their testimony on these questions can hardly be said to have been contradicted, and is of a very convincing character." (p. 359.) It was also said: "She [the plaintiff] admitted that the doctor made an examination of his condition and prescribed certain medicine which was given to the insured. The finding that

he had not consulted nor been attended professionally by Doctor Clifton was therefore contrary to the evidence of both plaintiff and defendant." (p. 358.)

The original certificate to Michael Shanahan was based upon an application made August 21, 1918. A later certificate was issued in lieu of this, but the controversy is not affected by the exchange. In the application the answer "none" was returned to each of the following questions: "What illnesses, diseases or injuries have you had since childhood?" "Name of medical attendant?" "State every physician or practitioner who has prescribed for you or treated you, or whom you have consulted in the past five years?" The certificate warranted the truth of these statements and provided that it should be rendered void if any material representation were false.

The records of the packing house in which the insured was employed showed that on October 26, 1918, he was reported as having Bright's disease, the physician's report concluding with the entry— "Actual length of disability, from August 24, 1918, to ——— still off, on October 26, 1918." It was shown that he drew from the packing-house company eight weeks' benefits, beginning August 24, 1918. The company's doctor testified that in addition to attending him at this time he had also, several months before—within the preceding year—treated him at his [Shanahan's] home for Bright's disease; that he then found him dropsical, short of breath, his heart disorganized, some leakage and some murmurs; that he told him and his wife both of his condition. He was again asked whether at this time he told Shanahan what his illness consisted of, and answered:

"Well now I may have hinted it. The idea is that when a man has Bright's Disease and he has a heart, we generally take the rest of the family into confidence and tell them first and then get it to him in a manner like this—'now you have got a badly disorganized heart, and your kidneys are in a situation of inflammation, popularly known as Bright's disease; and you must not run upstairs or lift heavy until you get by this. If you don't take things quietly you might drop off.'"

He was then asked—"Did you tell Mike Shanahan that?" and answered "Yes." He said he did not remember how many calls he made on the occasion of this sickness—"probably two or three . . . it may have been more but it wasn't very many."

This evidence made a very strong case, but it was not uncontradicted. The plaintiff did not testify merely that she did not know of the doctor having attended her husband some months before he applied for membership in the fraternal association, but specifically stated that the treatment said to have been given at that time never

Kovac v. Sons and Daughters of Justice.

took place. It could not have taken place as narrated without her knowledge, for the doctor said that several visits were made at the home, and that he told the plaintiff of her husband's condition. Some vagueness of recollection may perhaps be inferred from the doctor's expression as to telling Shanahan what ailed him—"Well now I may have hinted it," and from his uncertainty as to the number of visits and the time they were made. The insured had worked at the packing house for some fifteen years, and its records showed that he had received sick benefits for the period from August 24 to October 26, 1918, but did not show benefits paid him at any other time. His wife testified that he had never lost any time from his work through sickness, and that when she called the doctor for the illness of August 24 he told her that her husband had never previously consulted him. The doctor denied saying this.

The Glasgow case is not controlling, because here the evidence referred to raised an issue, not necessarily of veracity, but of fact, as to whether the doctor had attended the insured prior to the issuance of the certificate. However improbable it may have been, it is of course possible that the doctor may have been mistaken in his dates and have attributed the occurrences of August, 1918, to an earlier time.

2. The jury answered "no" to the question—"Did Michael Shanahan at any time in his life since childhood, prior to the 21st day of August, 1918, have any illness, disease or injury whatever?" The defendant urges that the judgment should be set aside because the doctor testified that in 1913 he had treated Shanahan for a cut finger. We do not regard the insured's omission to refer to that matter in his answer as important. (*Farragher v. Knights & Ladies*, 98 Kan. 601, 159 Pac. 3.) The provision of the certificate was that it should be void if any representations of the application "material to the acceptance of this risk" were false. The defendant suggests that as the insured was a butcher and died of tuberculosis the information regarding the cut finger affected the risk because tuberculosis may be contracted through contact with a diseased animal. We consider the connection as too remote. Moreover, the answer of the defendant, while pleading in considerable detail the alleged misrepresentations in the application, made no reference to this matter, which cropped out incidentally in the cross-examination of the doctor.

The judgment is affirmed.