No. 24,908.

ELLA STEELE, *Appellee,* v. THE SOVEREIGN CAMP OF THE WOODMEN
OF THE WORLD, *Appellant.*

SYLLABUS BY THE COURT.

1. FRATERNAL BENEFIT INSURANCE—*Impeaching One's Own Witness.* Ordinary a litigant will not be permitted to impeach a witness called by him.

2. SAME—*Proof of Custom.* A custom cannot be proved by a single instance, remote in time.

3. SAME—*Interpretation of Finding of Jury.* An expression of doubt by a jury of the existence of a fact is not tantamount to a finding that the fact exists.

4. SAME—*False Answers to Material Questions in Application Render Certificate Void.* Questions asked upon an application for a beneficiary certificate as to whether the applicant ever failed to obtain life, accident or health insurance applied for, and whether any physician had ever declined to recommend applicant for life, accident or health insurance, are material, and false answers given by him to such questions operate to annul the certificate.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed January 12, 1924. Reversed.

*Edward S. McAnany, Maurice L. Alden, Thomas M. Van Cleave,* all of Kansas City, *John T. Harding, David A. Murphy, Paul R. Stinson,* and *R. Carter Tucker,* all of Kansas City, Mo., for the appellant.

*James P. Fox,* of Kansas City, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action on a beneficiary certificate issued by defendant on the life of plaintiff's son, Louis M. Steele. There was a trial to a jury, which returned answers to special questions and a general verdict for plaintiff. The defendant has appealed.

Plaintiff's petition contained the necessary allegations. The answer admitted the issuance of the certificate, the death of Louis M. Steele, that all payments of dues and proof of death had been made, but denied liability for the reason that the beneficiary certificate had been issued upon the written application of Louis M. Steele in which he warranted as true answers made by him to certain questions therein which proved to be false and, specifically, that Louis M. Steele had answered that he had never failed to obtain life, health or accident insurance applied for; that no physician

had ever declined to recommend him for life, health or accident insurance, when in fact he had, prior to his making such application, made application to the Metropolitan Life Insurance Company for life insurance and had been rejected because he was at that time suffering from "mitral insufficiency of the heart and irregularity of the heart" and was considered a poor risk. Defendant further averred that had Louis M. Steele truthfully answered the questions in his application, defendant would not have issued the beneficiary certificate sued upon and that by reason of such false statements the certificate was void. Plaintiff replied by a general denial and averred that if the application contained any false or untrue statements, agreements or warranties, as to the condition of the bodily health of Louis M. Steele or that he had ever failed to obtain life, health or accident insurance applied for, or any other false or untrue statements, agreements or warranties, such statements, agreements and warranties were not made by the insured Louis M. Steele and were not his statements, agreements and warranties, but were made by the examining physician of the defendant, who was the agent of the defendant, as was the custom of said physician; that the examining physician did not ask the insured the questions purported to be asked in the application, the answers to which contained such false and untrue statements, agreements and warranties, if any, and such questions were never propounded to or answered by the insured Louis M. Steele, and were not his answers, but were the answers of the examining physician.

Upon the trial plaintiff introduced the certificate, showed the payment of dues, the death of Louis M. Steele; that proof of death had been made and that the amount of the certificate had never been paid.

Defendant then offered in evidence the application for the beneficiary certificate, signed by Louis M. Steele, which contained, among other things, the following:

"I hereby certify, agree and warrant that I am of sound bodily health and mind; that I am temperate in habits and have no injury or disease that will tend to shorten my life. I hereby consent and agree that this application, consisting of two pages, to each of which I have attached my signature, and all the provisions of the Constitution and Laws of the Society, now in force or that may hereafter be adopted, shall constitute the basis for and form a part of any beneficiary certificate that may be issued to me by the Sovereign Camp of the Woodmen of the World, whether printed or referred to therein or not. I hereby waive the attaching of copies thereof to said

Steele v. Woodmen of the World.

certificate;  . . . . I hereby certify, agree and warrant that all the statements, representations and answers in this application, consisting of two pages as aforesaid, are full, complete and true, whether written by my own hand or not, . . . , and I agree that any untrue statements or answers made by me in this application . . . , or to the examining physician, or any concealment of facts in this application or to the examining physician, intentional or otherwise, or my being suspended or expelled from or voluntarily severing my connection with the Society, or if I fail to comply with the laws of the Society, now in force or hereafter adopted my beneficiary certificate shall become void and all rights of any person or persons thereunder shall be forfeited . . . ."

Also certain questions and answers, among them the following:

"Q. Did you ever fail to obtain life, health or accident insurance applied for? A. No. Q. Has any physician ever declined to recommend you for life, health, or accident insurance? A. No."

Charles W. Allen testified that he was an insurance solicitor for the Metropolitan Life Insurance Company; that in June, 1915, he met Louis M. Steele and took his application for insurance in that company. The application was turned in to the office for record and to the medical examiner for examination and forwarded to the home office; that the application was rejected and the policy never issued. John N. Coolidge, assistant medical director for the Metropolitan Life Insurance Company, whose duty it is to act upon applications for insurance, testified that in June, 1915, he received an application for insurance from Louis M. Steele, that the medical examiner's report showed the applicant was suffering from mitral insufficiency of the heart and irregularity of the heart. It also showed that the applicant's chance for life in comparison with others of the same age and sex was bad. For that reason he refused to recommend him as a risk and rejected his application. A. D. Cloyd, the sovereign physician of defendant, whose duty it is to examine applications and medical examinations of applicants for membership in the defendant society, and to accept or reject the same according to the statements, answers and representations of the applicant, testified that he received and examined the application of Louis M. Steele for membership on May 29, 1919, and indorsed it with his acceptance on June 2, 1919; that he was induced to accept the application on the faith of the statements, answers and representations contained in the application for membership and, had he known, or had it been revealed in the application, that Louis M. Steele suffered from mitral insufficiency and irregularity of the heart

11—115 Kan.

action, or that he had been previously examined by a physician upon an application for insurance and the physician had failed to recommend him for insurance and that such application had been rejected by the company to which it was made, he would have rejected this application.  John T. Gates, sovereign clerk and *ex officio* secretary of defendant, testified that on May 23, 1919, he received an application for membership from Louis M. Steele and referred it to the sovereign physician for his approval; that he did not know Louis M. Steele and had no knowledge whatever of him aside from that presented in the written application for membership; that the benefit certificate sued on in this action was afterwards issued to him on the faith of the statements, answers and representations made in his application which were warranted to be strictly true; that had he known Louise M. Steele was not acting in good faith, or that any of the statements, answers and representations in his application for membership were not true, he would have refused to issue a beneficiary certificate to him, and if, subsequent to the issuing of the certificate and during the life time of the deceased he had secured any information or knowledge that the statements, answers and representations in the application were not true, he would immediately have called in his beneficiary certificate for cancellation.

Plaintiff then called in rebuttal Dr. Robert E. Barker, who had taken the application and made the medical examination for Louis M. Steele upon which the beneficiary certificate sued upon was issued.  He was asked if he remembered the circumstance of taking the application and said he would not remember the name except that it appeared over his signature; that he was familiar with the application blank in question.

"Q.  Will you say whether or not you asked this applicant all of the questions that are contained in that blank?  A.  Well, now, there is a great deal of minute stuff in there that we may not always read to the applicant, but the matters in general, relative to the general condition of the body, I always aim to ask them.

"Q.  Do you ask him, always ask the applicant, and did you in this case, ask him all those questions?  A.  I asked him these in reference to the ages and time of sickness and so forth, and cause of death, and I usually ask those, but now here is a part of the history, and rather than entering into every minute question there, and going through and answering each, I sometimes ask just 'what sickness have you had in your lifetime?' and we would indicate the whole entire list, and he would say, 'none,' and that means 'no' to all these questions.  It is a fact that some chance times I don't run

over all this little fine stuff, but in this personal history I always make it a point to ask them what sickness they have had, and if they say, 'I have had certain 'sicknesses,' like pneumonia, I locate that and say 'yes' or 'no,' and here I would say 'what sicknesses have you had in your lifetime' and if he says 'no,' I would make those all 'no.'

"Q. Are you particular to ask if they have been rejected from other societies? A. Well, I usually aim to ask that question.

"Q. Well, do you know whether or not you did in this case? A. Well my opinion is that I did.

"Q. On what are you basing that opinion—your custom? A. That is my general method of asking that very question, because I consider it very important.

"Q. You have no independent recollection of asking Mr. Steele that question? A. No more than any other applicant."

On cross-examination he testified:

"Q. Now, I will just read this from the answers (Referring to the application of Louis M. Steele.) 'Did you ever fail to obtain life, accident or health insurance applied for?' The answer is 'No.' Now, Doctor, did you write that answer? A. Yes, that is my signature.

"Q. Before writing that answer did you ask that question? A. Yes, sir; that is my best recollection.

"Q. 'If so, when and in what company?' Had he answered that he had been rejected, you would have asked the question and filled that in, would you? A. Yes, sir.

"Q. Did you ask him this question: 'Have you ever been rejected or expelled by a Camp of This Order?' And the answer . . . he answered, 'no'? A. Yes, sir.

"Q. Did you ask this question: 'Has any physician ever declined to recommend you for life, accident or health insurance?' And did he answer you 'No', and did you write the answer, 'No'? A. Yes.

· "Q. Now, if he had answered 'yes', you would have asked him the particulars and written them in that blank, that is, if he had been rejected by a physician? A. I surely would. Yes, sir.

"Q. You have left that blank because he answered 'no', is that correct? A. Yes.

"Q. Now, we read this other: 'For the purposes of this application, I declare and warrant the foregoing answers and statements to be correct.' Did Louis M. Steele sign his name to that application and those answers, after you had asked them and written them down? A. The gentleman I examined wrote his name. I don't know whether it was Louis M. Steele or not.

"Q. He said he was Louis M. Steele? A. Yes, sir.

"Q. And did you witness his signature? A. I did.

"Q. And he gave those answers of family history there at the time? A. The gentleman that signed his name there gave those answers.

"Q. This was the application to be forwarded to the Sovereign Camp, Woodmen of the World, upon which a policy was to be issued to Louis M. Steele, the gentleman who signed that application in your presence there that day, was it not? A. Yes, sir.

"Q. And you saw him sign it? . A. Yes, sir.

"Q. And you signed it as a witness, on May 15, 1919, at Kansas City, Kansas? A. Yes, sir.

"Q. Did you correctly set out the answers that he gave you to those questions before he signed it? A. That is my best recollection, yes, sir."

Plaintiff then asked:

"Q. Doctor, I will ask you this question: Have you ever examined or filled in a blank application in this organization without ever asking the applicant or supposed applicant a single question? A. Never have.

"Q. Or without having him sign it? A. I never have."

Plaintiff then called Clarence C. Hopkins, who testified that he was not a member of the defendant society, never made application for insurance therein, never was examined by Doctor Barker or any other doctor for admission therein, never was initiated and never had a policy of insurance issued by the defendant society to him. Plaintiff then called Ida Hopkins, the mother of Clarence C. Hopkins, who testified in substance that in March, 1920, Doctor Barker, the examining physician of the defendant society, came to her house and filled out the application for membership in the defendant society for her son, Clarence C. Hopkins; that her son was not present at the time; that the doctor asked her some of the questions, filled out the application blank himself, and that she signed her son's name to it and that the application was presented to the defendant society and a beneficiary certificate issued thereon. All of this testimony of Ida Hopkins and her son was introduced over the objection of the defendant, and at the close of the testimony a motion was made to strike it out, which motion was overruled.

The jury returned answers to special questions as follows:

"1. Was the membership certificate sued upon herein issued by the defendant upon an application signed by Louis M. Steele, which has been introduced in evidence? Answer. Yes.

"2. If you answer question 1 yes, at the time such application was signed, did said application contain the following question and answer: 'Question. Did you ever fail to obtain life, accident or health insurance applied for? Answer. No.' Answer. Yes.

"3. If you answer question number 1 yes, at the time such application was signed, did said application contain the following question and answer: 'Question. Has any physician ever declined to recommend you for life, accident or health insurance? Answer. No.' Answer. Yes.

"4. At the time of application for the membership certificate in question had Louis M. Steele at any time prior thereto failed to obtain life, accident or health insurance? Answer. Yes.

"5. At the time of application for membership certificate in question, had any physician at any time prior thereto declined to recommend Louis M. Steele for life, accident or health insurance? Answer Yes.

"6. Was the membership certificate in question issued by the defendant in reliance upon the answers to the questions made in the application of Louis M. Steele, introduced in evidence herein? Answer. Yes, but we doubt the examining physician asking Mr. Steele these questions."

Defendant moved for judgment in its favor on the special findings, notwithstanding the general verdict. This motion was overruled as was also its motion for a new trial.

Appellant complains of the admission of the testimony of Ida Hopkins and her son. It was erroneously admitted. No proper foundation was laid to impeach Doctor Barker. But, passing that, Doctor Barker had been called to the witness stand by plaintiff. By doing so plaintiff represented to the court that he was worthy of belief. Ordinarily, a litigant is not permitted to impeach a witness called by him. (*The State v. Keefe*, 54 Kan. 197, 38 Pac. 302; *Johnston v. Marriage*, 74 Kan. 208, 86 Pac. 461, 87 Pac. 74.) Plaintiff recognizes this rule but says Doctor Barker was a hostile witness, for which reason the testimony was proper. There is nothing in the language of the testimony of Doctor Barker, and nothing is complained of respecting his demeanor on the witness stand, to indicate that he was hostile to the plaintiff. He was at the time of the trial and had been for several years the local examining physician for the defendant and appellee contends that this is sufficient to justify the court in permitting plaintiff to impeach his testimony; but that cannot be true in the absence of anything in the testimony or conduct of the witness which tends to show that the party calling him is surprised at the testimony given, or that he is obviously attempting to favor the other side of the controversy. In this case the printed testimony of the witness bears the ear marks of veracity. He said he did not remember all the incidents connected with the examination of this particular applicant and did not have an individual recollection of just what was said at the time and, from the very nature of things, ordinarily this would be true. Certainly it cannot be said to be more favorable to the defendant than the plaintiff would naturally expect.

Appellee contends that this testimony was competent as showing the custom of Doctor Barker in making these examinations. The trouble with that theory is, this was a single instance occurring

nearly a year later. A custom cannot be shown by a single instance, remote in time. (*Manufacturing Co. v. Merriam*, 104 Kan. 646, 180 Pac. 224; 17 C. J. 520.)

The jury, after answering the sixth question by saying "yes," added the following, "but we doubt the examining physician asking Mr. Steele these questions." Appellee argues this as though it established the allegations of his reply, which were that questions in the application were never propounded to Steele and that he did not answer them as the answers appear in the application, but the language is not susceptible of that meaning. An expression of doubt is not tantamount to a finding of fact. Doubt indicates an uncertainty, a lack of sufficient information upon which to reach a conclusion. (19 C. J. 447.) More than that, this part of the answer might have been treated as surplusage and disregarded. (*Hall v. Kansas City*, 112 Kan. 752, 212 Pac. 875.) The question was fully answered with the word "yes." What followed in the answer was a voluntary statement of the jury, not called for by the question submitted.

Appellant complains that the court did not sustain its motion for judgment on the special findings, notwithstanding the general verdict, and we think that should have been done. The answers to the special questions clearly show that the application contained false answers to material questions. These answers were warranted as being true. It is clear that the officials of the defendant society relied upon the truthfulness of these answers when the beneficiary certificate was issued and would not have issued it had they known these answers to be false. The case seems to fall squarely within the principle decided in *Glasgow v. Woodmen of the World*, 107 Kan. 354, 191 Pac. 470, and *Hiatt v. Woodmen of the World*, 107 Kan. 359, 191 Pac. 472.

The case will be reversed with directions to enter judgment for defendant.