No. 19,457.

MINNIE M. NEWTON, *Appellee*, v. THE NEW YORK LIFE INSURANCE COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. LIFE INSURANCE—*When Misrepresentations as to Health Will Not Defeat Policy.* The withholding or misrepresentation of facts in an application for life insurance will not defeat the insurance policy unless those facts, thus withheld or misrepresented, pertain in some degree to the malady which occasions the death of the assured, following section 4200 of the General Statutes of 1909.

2. SAME—*Presumptions as to Statute of Another State.* In the absence of pleading or proof there is a presumption of law that the insurance laws of another state are like our own, following *Furrow v. Chapin,* 13 Kan. 107, and cases cited in the opinion.

3. SAME—*Findings Sustained by Evidence.* Record examined and evidence held to sustain the jury's special findings of fact.

Appeal from Douglas district court; CHARLES A. SMART, judge. Opinion filed May 8, 1915. Affirmed.

*A. W. Benson,* of Topeka, *W. B. Brownell,* of Lawrence, and *James H. McIntosh,* of New York, N. Y., for the appellant.

*S. D. Bishop,* of Lawrence, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This is an appeal from a judgment of the district court of Douglas county in favor of the beneficiary of a life insurance policy.

James D. Newton had been an officer of the United States Revenue Cutter Service, and was retired in 1901 on account of tuberculosis; and at various times in the years 1901, 1902, 1903 and 1904 he was in a federal sanitarium at Fort Stanton, N. Mex., on that account. July 7, 1904, he was discharged from the institution as unimproved.

In 1898 Newton had received a policy of insurance from the defendant. In 1905, he procured another policy from the same company. On October 5, 1911, he received a third policy from the defendant. Newton and his family resided in Chicago, Ill., at the time this third policy was issued. He died in that city on August 8, 1912, following a surgical operation for an ulcer in the stomach; and it is the refusal of the defendant to pay this third policy which gives rise to this lawsuit.

To justify this refusal the defendant alleged that Newton had misrepresented the facts in his application for the policy; that he avowed that he had never suffered from any disease of the lungs except in 1898 at which time he was ill with grippe and "dodging pneumonia"; that he had never suffered from any disease of the stomach or intestines except in 1906 when he had typhoid fever; that he had never consulted any physician except at these instances of pneumonia and fever; that no insurance company had examined him for insurance without issuing him a policy; that these statements and representations were false and Newton knew they were false and made them for the purpose of defrauding the defendant; and that if defendant had known the truth it would have declined the application and would not have issued the policy. Defendant tendered the return of the premium.

The plaintiff beneficiary replied by denying that Newton, her husband, had made any false and fraudulent representations, and alleged that he had made a full and complete disclosure concerning the condition of his health; and replied further that the defendant knew the condition of Newton's health not only at the time the application was made but had known the condition of his health long prior thereto, in 1898 when it issued to him its first policy, and in 1905 when it issued to him its second policy, and that defendant had the data concerning these in its files, and Newton's prior applications fully disclosed his condition of health; and that at the time of the application for the policy issued in 1911 the defendant's medical examiner was fully apprised of the condition of Newton's health. The other allegations of the answer were traversed.

The jury made the following findings of fact:

"1. Did the insured, James D. Newton, in the application signed by him for the policy sued on in this case, make full, complete and true answer to question No. 8 in said application, which was in words and figures as follows: 'Has any life insurance company ever examined you, either on an application for insurance or for any other reason without issuing a policy? (If so, state name of company.)' To which question the said James D. Newton answered 'No.' Answer to question No. 1.—Yes.

"2. Did the insured, James D. Newton, in the application signed by him for the policy sued on in this case make full, complete and true answer to question No. 9, section B, in said application, which is in words and figures as follows: 'Have you had or suffered from any of the following diseases? Answer "Yes" or "No" to each part of this query below. Give explicit and particular answers in each case. Of the heart or lungs?' To which question the said James D. Newton answered as follows: 'Yes. Pneumonia. One attack in 1898.' Answer to question No. 2.—Yes.

"3. Did the insured, James D. Newton, in the application signed by him for the policy sued on in this case make full, complete and true answer to question No. 9, section C, in said application, which was in words

and figures as follows: 'Have you had or suffered from any of the following diseases? Answer "Yes" or "No" to each part of this query below. Give explicit answers and particulars in each case. Of the stomach or intestines, liver, kidneys, or bladder?' To which question the said James D. Newton answered as follows: 'Yes. Typhoid fever. One attack in 1906. Eight weeks' duration. Moderate severity. Recovery after rectal abscess.' Answer to question No. 3.—Yes.

"4. Did the insured, James D. Newton, in the application signed by him for the policy sued on in this case make full, complete and true answer to the question No. 10 in said application, which was in words and figures as follows: 'Have you ever consulted any physician for any illness not mentioned above?' To which the said James D. Newton answered as follows: 'No.' Answer to question No. 4.—Yes."

The substance of this appeal is that the special findings are contrary to the evidence and that the court erred in presuming that the Illinois law is like our own. (Gen. Stat. 1909, § 4200.)

On the first of these contentions there is much that could be said. Defendant certainly made a strong case of misrepresentation, but if the evidence was contradictory, the determination of it was for the jury. We lay aside the matter of tuberculosis because there is abundant evidence that Newton had completely recovered from that malady and it had nothing to do with his death. The death certificate reads:

"11.   a.   What disease was the immediate cause of death? Ans. Perforation of stomach due to ulcer.

"12.   a.   From what other important diseases, if any, did deceased suffer? Ans. None."

The hospital surgeon testified that after the operation for the ulcer Newton suddenly developed peritonitis. He did not think the ulcer was of long standing.

As to stomach trouble, Newton told the defendant's examiner he frequently had indigestion. Some of the medical expert witnesses classified indigestion as a disease and some said it was not. The medical examiner

testified that he did not set down in the application blank the matters which he deemed inconsequential. (*Insurance Co. v. Davis*, 59 Kan. 521, 53 Pac. 856.)

There is a sharp conflict in the evidence as to whether Newton falsified in his application in response to the question set out in the fourth finding of fact. From the printed page, we would say that the defendant made the stronger showing, but the trial court and jury had a better opportunity to determine that question than we have, and it was the jury's province and not ours. Moreover, the burden of proof was on the defendant, and the jury apparently concluded that the defendant did not maintain that burden. There was evidence on both sides, and the fourth finding of fact is conclusive.

A serious difficulty in this case lies in the answer of Newton to the question in his application:

"Question: Has any life insurance company ever examined you, either on an application for insurance or for any other reason without issuing a policy? . . . Answer: No."

The assistant medical director of the Illinois Life Insurance Company who had under his control the applications for life insurance in that company was a witness for the defendant, and he produced and identified a photographic copy of an application made by Newton in March, 1908, to his company. Another witness was the medical examiner for that company who set down Newton's answers to the questions in that application. The assistant medical director of the Illinois company testified:

"After examining the record of Newton's application, I find that it was concluded to decline his application on the 12th day of March, 1908."

No great stress seems to have been laid on this particular matter by the district court. Counsel for the appellee answers this by saying:

"The record is silent as to whether or not this policy

was issued. . . . The doctor was not with the Illinois Life . . . in 1908, the date of the supposed application. . . . [His] general statement . . . is indefinite . . . merely a conclusion of the witness, . . . and if the company relied upon this statement as a misrepresentation, it was incumbent upon it to show positively that no policy was issued."

Probably this is a sufficient answer to defendant's contention on this point. We can not bring our minds to the conclusion that the jury's first finding of fact on that point should be overturned. We prefer to let it rest on the finding of the jury rather than to permit it to be governed by section 4200 of the General Statutes of 1909. Indeed we have grave doubt as to whether a misrepresentation of this sort would not be material in every application for an insurance policy. An insurance company has a right to be put on its guard by a frank and truthful answer to a question of this sort. We could not say as a matter of law that a misrepresentation of this sort is ever immaterial.

We have discussed this case hitherto from its worst aspects as to the conduct of Newton. It is only just to say that the witnesses for the plaintiff make out a good case for him as a candid and upright man; that in this application and in his earlier applications for insurance policies to this defendant company he had fully apprised the company of his health history; that after he left the New Mexico sanitarium he was a professor of engineering for several years at the University of Kansas; that he was an active, energetic man, fond of golf and out-of-doors exercise; that up to the time of his last illness and consequent surgical operation which resulted fatally, and for a year or two prior thereto, he was dean of the engineering school of Loyola University in Chicago, working hard with his classes every day; that he was in excellent health except for an occasional attack of indigestion which some reputable physicians did not even consider a disease.

The findings of fact made by the jury will not be disturbed.

Did the court err in presuming that the law of Illinois, where the insurance contract was made, was the same as in Kansas?

Section 4200 of the General Statutes of 1909 reads:

"No misrepresentation made in obtaining or securing a policy of insurance on the life or lives of any person or persons, citizens of this state, shall be deemed material or render the policy void unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable."

The substance of this statute was incorporated in the instructions submitted to the jury. The law of Illinois was neither pleaded nor proved, and the court presumed that the law of Illinois was like our own. Was this error? We have supposed that such a presumption is a common one in all jurisdictions adhering to the common-law system of jurisprudence. It is unnecessary to speculate whether that presumption would apply to contracts made in countries adhering to the civil law, the Mohammedan law or some other system generally known to be vastly different from the common law. But even in such a case it is not easy to see how our courts could dispose of a contract arising thereunder when no information concerning the *lex loci contractu* had been submitted. The court could not refuse to give judgment, and the only judgment it could give would necessarily be based on the law and the presumptions of law with which the court was familiar.

In an early case (*Furrow v. Chapin,* 13 Kan. 107, 113) Mr. Justice Valentine said that in the absence of proof this court would presume that laws similar to our own exist everywhere throughout the civilized world. This takes nothing from the authorities cited by appellant. They merely hold that when the law of another

state becomes material it must be pleaded and proved as a fact. (*Bolinger v. Beacham*, 81 Kan. 746, 106 Pac. 1094.) Here our question is, What is to be done when such foreign law is not pleaded and proved? It is conceded that *Woolacott v. Case*, 63 Kan. 35, 64 Pac. 965, is against appellant's contention. In that case it was said:

"The laws of a sister state, in the absence of proof, will be presumed to be the same as our own, and this presumption extends to the statutory as well as the common law of such state." (Syl. ¶ 1.)

But it is gravely urged that this case should be overruled, as if it were a mere vagrant decision from the "wilderness of single instances." Not so, however. A long line of our own cases are to the same effect: *Furrow v. Chapin*, 13 Kan. 107; *K. P. Rly. Co. v. Cutter*, 16 Kan. 568; *Holthaus v. Farris*, 24 Kan. 784; *Baughman v. Baughman*, 29 Kan. 283; *Rogers v. Coates*, 38 Kan. 232, 16 Pac. 463; *Poll v. Hicks*, 67 Kan. 191, 72 Pac. 847; *Bank v. Nordstrom*, 70 Kan. 485, 78 Pac. 804; *Brown v. Baxter*, 77 Kan. 97, 105, 106, 94 Pac. 155, 574; *Bershears v. Nelson*, 80 Kan. 194, 101 Pac. 1011; *Cunningham v. Patterson*, 89 Kan. 684, 686, 132 Pac. 198.

An excellent collation of authorities to the same effect is found in *Maloney v. Winston Bros. Co.*, 18 Idaho, 757, 111 Pac. 1080. Indeed, the textbook (Bliss on Code Pleadings, 3d ed., § 180), cited by appellant, gives no support to appellant's contention. On the contrary, it says:

"There can, upon principle, be no difference in this respect between the unwritten and statutory law."

The footnote does cite an excerpt from *Throop v. Hatch*, 3 Abb. Pr. (N. Y.) 23, against the general doctrine, but it is so much at variance with our own decisions and the weight of authority that it must be disregarded.

The district court did not err in invoking this presumption and its judgment is affirmed.