No. 27,200.

MARY K. QUINTON, *Appellant*, v. FANNIE L. KENDALL, *Appellee*.

SYLLABUS BY THE COURT.

1. WILLS—*Construction—Nature of Estate Created.* The will of plaintiff's father and defendant's husband examined and held to have devised the testator's entire estate to defendant and not to be fairly susceptible of an interpretation that it devised a life estate to defendant and remainder to plaintiff and her sister.

2. FRAUDS, STATUTE OF—*Oral Agreement to Hold Land in Trust.* An alleged oral agreement of plaintiff and defendant (and others) following the death of the testator in 1899 whereby defendant agreed to hold in trust for plaintiff and her sister the estate devised in fee to defendant and to make a will bequeathing that estate to them, was void under the statute of frauds, and under the statute of trusts, and was without consideration.

3. SAME—*Oral Agreement Concerning Lands—Effect of Later Putting Agreement in Writing.* Certain agreements made twenty-two years after the

Appeal and Error, 4 C. J. pp. 71 n. 97, 683 n. 92, 809 n. 32, 819 n. 97, 842 n. 58, 955 n. 35. Evidence, 22 C. J. pp. 70 n. 54, 159 n. 54. Frauds, Statute of, 27 C. J. pp. 208 n. 82, 265 n. 28; 25 R. C. L. 533. Judgments, 34 C. J. p. 1155 n. 11. Trial, 26 R. C. L. 1036, 1042. Wills, 40 Cyc. pp. 1427 n. 3, 1579 n. 56, 1860 n. 10.

alleged oral agreement referred to in syllabus paragraph 2, which set down in writing what the parties could remember of the terms of the original oral agreement, did not supersede the earlier unenforceable oral agreement, and a fallacious premise in such later agreements touching the nature of the testator's devise rendered them abortive to bind the defendant.

4. JUDGMENTS—*Foreign Administration of Estate—Res Judicata.* A judgment of a Michigan probate court having jurisdiction of the parties and subject matter construing a will and administering an estate in accordance with Michigan law is not open to collateral attack, and when such judgment was neither reversed nor modified by appeal, it is *res judicata.*

5. APPEAL AND ERROR—*Time for Appeal—Construction of Will.* A construction of a will elicited by appellant's demurrer and at her solicitation, and which went to the merits of the action and necessarily controlled it, is conclusive when no appeal was taken therefrom within six months—following *Andrews v. Glidden,* 122 Kan. 291, 251 Pac. 1078.

6. TRIAL — *Reception of Evidence — Burden of Proof — When Immaterial.* Where each party to a lawsuit had a fair opportunity to present all his evidence, the question as to which litigant had the burden of proof is immaterial unless the trial court's ruling thereon shifts the risk of nonpersuasion from the litigant who must bear it in order to prevail in the action.

7. APPEAL AND ERROR—*Review—Excluded Evidence.* Exclusion of evidence is not a basis of error when the record does not show what it was.

8. CONTINUANCE—*Costs—Discretion of Court.* Without a showing of prejudice, error cannot be based on the granting of a continuance, and the assessment of costs incurred thereby is within the trial court's discretion.

9. EVIDENCE—*Exhibits—Necessity of Probative Force.* Certain exhibits proffered in evidence by plaintiff considered and held to have been without probative force and not improperly excluded.

10. TRIAL — *Reception of Evidence — Reopening Case — Discretion of Court.* The privilege of reopening a case for the introduction of further testimony is one which the trial court at its discretion may grant or deny, and no abuse of that privilege appears where the record does not show what further evidence would have been adduced.

11. JUDGMENTS—*Effect of Improper Reason.* Rule followed that a trial court's reasons for a judgment are immaterial when the judgment itself is correct.

12. WILLS—*Construction—Effect of Family Understanding.* A family understanding of a clear and simple testamentary devise cannot affect its text and significance when its specific terms have to be subjected to judicial construction.

13. TRIAL—*Remarks of Trial Court After Judgment.* Remarks of trial court after pronouncing judgment considered and held to furnish no basis for reversing the judgment.

Appeal from Shawnee district court, division No. 3; OTIS E. HUNGATE, judge. Opinion filed February 12, 1927. Affirmed.

*Eugene S. Quinton,* of Topeka, for the appellant.

*T. F. Garver, A. M. Harvey* and *Randall C. Harvey,* all of Topeka, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action between a daughter and her mother in which the plaintiff sought to enforce an alleged oral agreement whereby the mother many years ago bound herself to hold the entire estate of her husband, devised to her by his will, as a life estate in her own behalf, and to devise that estate to plaintiff and her sister, daughters of defendant and her deceased husband.

The petition alleged that in 1899 defendant's husband, L. B. Kendall, died testate, devising all his property in fee to his two daughters, the plaintiff, Mary K. Quinton, and Mrs. Elizabeth K. Keely, subject to a life estate in favor of his wife, Fannie L. Kendall, defendant herein. It alleged that soon after the death of L. B. Kendall, defendant and her two daughters and their husbands, Eugene S. Quinton and Thomas Keely, discussed and inventoried the estate and orally agreed that the will of Kendall, deceased, should be withheld from probate, and that all the property of Kendall's estate owned or possessed by him at the date of the execution of his will, not disposed of to others than members of his own family, should be converted into money and invested in good securities in trust by defendant, Fannie L. Kendall, to provide an immediate income for herself as life taker, and as her part and obligation under this oral contract defendant agreed to hold the property in trust and preserve the estate and to make a will devising it in fee to her daughters, Mrs. Quinton and Mrs. Keely.

Plaintiff further alleged that in keeping with this oral agreement the will of Kendall was withheld from probate for many years, and defendant did make a will devising all her estate to Mrs. Quinton and Mrs. Keely. In 1921 Mrs. Keely died, and defendant, then living in Michigan, notified plaintiff that she proposed to make a new will. Plaintiff protested against that proposal as being at variance with the oral agreement made some twenty years before; and plaintiff alleged that it was then agreed that the "oral understanding and agreement in substance and the reasons therefor, as near as the same could be remembered," should be reduced to writing, which was done as follows:

Quinton v. Kendall.

"MEMORANDUM OF AGREEMENT.

"November 14, 1921.

"WHEREAS, Mr. L. B. Kendall at his death left a will, naming certain executors, by which he devised all his property, real and personal, to his wife, Fannie L. Kendall, for life, and at her death to his daughters and only children, Elizabeth and Mary, who at his death were married and were Mrs. Thomas Keely and Mrs. Eugene S. Quinton, that at the time of his death the wife, Fannie L. Kendall, had and has ever since had and now has the possession of said will.

"But, at that time it was suggested, in order that she might have the full enjoyment of said property, and for the purposes of obtaining possession of the same, it being to a large extent real estate, that her two daughters and their husbands join in a quitclaim deed to her for all interest in said estate, upon the understanding and agreement that Fannie L. Kendall would make a will, devising all of the property equally to her two daughters, Elizabeth and Mary, Mrs. Thomas Keely and Mrs. Eugene S. Quinton; and that, accordingly, quitclaim deeds were executed, to all interests in the estate, by her daughters, above named, and their husbands joining.

"And, in furtherance thereof, the said Fannie L. Kendall made and executed a will, in accordance with said agreement, willing all of said estate, at her death, equally to Mrs. Thomas Keely and Mrs. Eugene S. Quinton.

"And that by reason of such arrangement the will of Mr. L. B. Kendall has never been probated and the estate administered in accordance therewith.

"At the time it was not deemed necessary to have the understanding and agreement reduced to writing, but that on account of unforeseen conditions arising we believe it is best, that a statement of the same would prevent any misunderstandings and is advisable.

"(Signed)   FANNIE L. KENDALL,
              "MARY K. QUINTON,
                  "by EUGENE S. QUINTON
                      and
                  "EUGENE S. QUINTON."

Plaintiff alleged that defendant also agreed in writing to make a full report of the estate to plaintiff's husband within sixty days, and to keep him informed of any changes in its character. Part of this second agreement reads:

"   . . .                         "TOPEKA, KANSAS, November 17, 1921.

"Sixth.  That Fannie L. Kendall is to have the use and full enjoyment of said estate so long as she may live; but at her death said estate is to revert to and become the property of Elizabeth K. Keely and Mary K. Quinton, the same as if either or both were surviving.

"(Signed)   FANNIE L. KENDALL,
              "MARY K. QUINTON,
                  "by EUGENE S. QUINTON
                      and
                  "EUGENE S. QUINTON."

Shortly after the execution of these written agreements, Thomas Keely, husband of Mrs. Keely, died, and thereupon defendant notified plaintiff that she would not carry out the contracts written or oral which she had made touching the disposition of her estate, and that she proposed to devise and bequeath all her property to her grandchildren, sons of Mr. and Mrs. Keely.

"Plaintiff further states, that under and by virtue of the agreement the said Fannie L. Kendall was to have and hold in trust, after all lawful debts had been paid, the residue of the estate at the time of the death of the testator for the said Elizabeth K. Keely and Mary K. Quinton, the life interest in the use of the income from the same to the said Fannie L. Kendall for and during her life.

"Plaintiff therefore states, if the said defendant be permitted to continue and carry out her unlawful plans and schemes, as above stated, and to refuse to account for the estate received by her, and to carry out the trust and agreements entered into by the said plaintiff and defendant, this plaintiff will be deprived of all her right and interest in said estate, greatly to her injury and wrong; and that unless the said Fannie L. Kendall, defendant, is restrained and enjoined in the premises, and said estate taken in charge by the court and conserved for the interest of both parties, that the same will be lost entirely to this plaintiff."

Other matters alleged in the petition may presently be disregarded. It concluded with a prayer that plaintiff be decreed to be the owner of an undivided one-half interest in the L. B. Kendall estate, subject only to her mother's life interest therein, that a trust in that estate be declared, that defendant be enjoined from disposing of or concealing the property of the estate, and that she be required to make a full and complete inventory of the estate since the death of Kendall in 1899 until the present time, that a receiver be appointed to conserve the property and manage and control it under the direction of the court, and that the income thereof, less court costs, should be paid over to defendant during her lifetime, and for other equitable relief.

A copy of Kendall's will was attached to plaintiff's petition. Its significant parts read:

"I, Lucius B. Kendall, of the city and county of Kalamazoo, state of Michigan, . . . do make, publish and declare this to be my last will and testament as follows:

"First, after my lawful debts are paid, I give, devise and bequeath to my beloved wife, Fannie L. Kendall, all that I possess of real estate, personal or mixed property. It is my earnest desire, and I hereby make the urgent request, that my wife do all within her power, by pecuniary aid and otherwise,

Quinton v. Kendall.

to render the remaining time of my dear old mother's life as comfortable and happy as it is possible to make it.

"It is also my earnest desire that all the residue of the estate and property hereby willed and devised to my beloved wife, shall upon her demise go direct, share and share alike, to our beloved daughters, Elizabeth K. Keely, of Denver, Colorado, and Mary K. Quinton, of Topeka, Kansas. . . .

". . . 24th day of April, A.D. 1896.

"Lucius B. Kendall (Seal)."

Defendant's answer contained a general denial and pleaded matters not necessary to be presently repeated, and alleged that plaintiff had no estate or interest of any sort in the estate of L. B. Kendall, that for a time after L. B. Kendall's death defendant, relying on the statements and advice of Eugene S. Quinton, her daughter's husband, a lawyer by profession, a friend in whom she had trust and confidence, she was led to believe that her only interest in the estate of her husband was that of a mere life tenant, and that she was misled and coerced into signing the agreements of November 14 and 17, 1921.

Defendant further alleged that by the terms of her husband's will she became and was the absolute owner of all the property devised thereby, and neither plaintiff nor Mrs. Keely had any interest therein—

"Nor did defendant receive any consideration of any nature whatever for the promise on her part contained in said alleged contracts, and the same are void as being without consideration."

Defendant further alleged that when she was properly advised of her legal rights under the will, she caused it to be filed for probate in the probate court of Kalamazoo county, Michigan, that being the domicile of L. B. Kendall when he made the will and when he died, and also the home of defendant; and that the will had been duly admitted to probate.

By a supplemental answer, defendant alleged that the proceeds of the sale of the realty and miscellaneous property devised to her by her husband's will has been turned into cash and securities by advice of plaintiff's husband—

"And said estate now, and for several years past, has consisted entirely of stocks and bonds which have been continually in possession of this defendant until taken possession of by the administrator of said estate appointed by the probate court of Kalamazoo county, Michigan, as hereinafter alleged."

Defendant pleaded the pertinent Michigan probate law and law of wills.

Defendant further, by supplemental answer, alleged that the probate court of Kalamazoo county, Michigan, having full jurisdiction, construed the will of Kendall as vesting the entire estate in defendant, and that no estate therein was devised to plaintiff. Attached to this supplemental answer was a copy of the judgment record of the probate court of Kalamazoo county, Michigan. It shows the appearance of plaintiff, Mary K. Quinton, by counsel. Attached, also, to the supplemental petition was a copy of the record of the circuit court for the county of Kalamazoo, "In the matter of the appeal of Mary K. Quinton from the order of the probate court for the county of Kalamazoo, construing the will of Lucius B. Kendall, deceased." The record again shows that counsel appeared for Mary K. Quinton, daughter of the deceased, plaintiff herein, and that Eugene S. Quinton sought to appear for her as attorney in fact. The record recited further—"that no authority on the part of Eugene S. Quinton to act as attorney in fact was disclosed"; and for that and other reasons the appeal was dismissed by the circuit court—a court having both general jurisdiction and jurisdiction of appeals from Michigan probate courts.

To this answer and the supplemental answers plaintiff demurred, and after an adverse ruling thereon the demurrer was withdrawn and a reply of nearly nine printed pages was filed, all of which, except the general denial and prayer, was stricken out by order of the court.

So far as shown by plaintiff's abstract the trial quite largely took the form of a running colloquy between counsel for the litigants, interspersed with rulings and comments of the court (Hon. Otis E. Hungate, presiding). Very little if anything that could properly be characterized as evidence was adduced by the parties, save only certain exhibits attached to the pleadings as stated above.

Defendant's counter abstract shows that when the issues were being made up, two years or more before the trial, plaintiff demurred to defendant's answer and invoked a construction of the will of L. B. Kendall, and the court (Hon. George H. Whitcomb, presiding), prepared and filed a well-reasoned opinion in which it was held that by the terms of the will the defendant took an absolute title to the estate of her husband, and that the testator's expressed desires as to what he wished defendant to do on behalf of his mother and his daughters merely indicated his wishes, his advice, not more. Judge Whitcomb said:

Quinton v. Kendall.

"The testator might have believed and trusted that his wishes would be carried out, but he did no more than to advise his wife what his wishes were. If he had intended otherwise it would have been an easy matter to express his intention to create a life estate in his wife in a few simple words."

About the time this opinion was filed, October 27, 1923, the probate court of Michigan had the will under consideration and the following order was entered in this action:

"October 29, 1923. It appearing that the question of the construction of the will of Lucius B. Kendall is pending and will be construed and probably soon determined by the probate court of Michigan, where said will has been probated;

"Ordered that no order be entered herein as of October 27, and the matters arising on said demurrer and relating to the construction of said will be held for further order of the court."

At the conclusion of the trial (Judge Hungate presiding), defendant's demurrer to plaintiff's evidence was sustained. Plaintiff made application to reopen the case for the purpose of introducing testimony to show the construction of the will "by the heirs at the time and what was done under it." This was denied, and judgment was entered for defendant.

Plaintiff appeals, setting out a formal specification of errors to which her brief makes little reference. Her brief, however, is encumbered with many matters *aliunde*. This method of brief making not only disregards the rules of this court but in this particular case it has unduly burdened us with the task of segregating what was pleaded with some modicum of proof to support it from what was alleged but altogether devoid of proof, and from what is gratuitously volunteered concerning matters about which there was neither pleading nor proof.

With this preliminary drudgery understood and put to one side, however, the outstanding and controlling features of this lawsuit may readily be surveyed. The alleged oral agreement of twenty-five years ago between defendant and her daughters and their husbands concerning what she would do with the lands and miscellaneous properties devised to her by her husband was void under the statute of frauds (R. S. 33-106; *Pessemier v. Genn*, 104 Kan. 287, 178 Pac. 426), and void under the statute of trusts and powers (R. S. 67-401; *Silvers v. Howard*, 106 Kan. 762, 190 Pac. 1, syl. ¶¶ 1, 2 and 3). The memoranda of November 14 and 17, 1921, setting down what the parties then remembered of the unenforcible

agreement of 1899 did not cure the invalidity of the original agreement; nor were they fairly susceptible of a construction that they were intended to supersede the original oral agreement; but if these belated memoranda should be construed to be in themselves a sufficient compliance with the requirements of the statute of frauds and the statute of trusts, they are ineffective for two obvious reasons; *first,* the preliminary recitals in the agreement of November 14, "whereas, . . . Kendall . . . left a will . . . by which he devised all his property . . . to his wife, Fannie L. Kendall, for life, and at her death to his daughters," was a false premise, quite contrary to the fact and consequently constituted no consideration passing from the daughters to their mother for the obligation which the memoranda of November 14 and 17, 1921, would impose on her (*Glover v. Berridge,* 86 Kan. 611, 121 Pac. 1130) ; and, *second,* the plaintiff was a party to the probate and appellate proceedings in the Michigan courts, represented by counsel, and the decision of that tribunal under Michigan law is *res judicata.* (*Calhoun v. Cracknell,* 202 Mich. 431; *Riebow v. Ensch,* 220 Mich. 450.)   Our own law is to the same effect.  (R. S. 20-1101; *Shoemaker v. Brown,* 10 Kan. 383; syl. ¶ 2; *Proctor v. Dicklow,* 57 Kan. 119, 126, 45 Pac. 86; *Blackwood v. Blackwood,* 120 Kan. 72, 242 Pac. 451.)   Before those Michigan proceedings were instituted, defendant notified plaintiff and her counsel that she repudiated the agreements of November 14 and 17, 1921, and notified them that she proposed to stand on her rights under her husband's will, and have that will probated in the proper court.  It was the privilege of plaintiff, if she and her counsel had considered the agreements of November 14 and 17, 1921, to be of any binding force, to have offered them in evidence either in resistance to the probate of the will, or as an operative interpretation of its meaning placed upon that will for more than twenty years by the parties most concerned in its construction.  It was also plaintiff's privilege, had she chosen to do so, to invoke whatever statute Michigan has (*Newton v. Insurance Co.,* 95 Kan. 427, 148 Pac. 619) which accords with ours to the effect that parties who withhold a will from probate for more than three years can derive no benefit from it; as to them the will fails; and the estate descends to the heirs as in case of intestacy. (R. S. 22-233.)   Equally fatal to this phase of plaintiff's case was the ruling of Judge Whitcomb construing the will.   That ruling was made on October 27, 1923.   It was a ruling on the merits of this case

and was invoked by plaintiff's demurrer to defendant's answer. This appeal was not taken until June 8, 1926, two years, seven months, eleven days after the trial court's ruling thereon. This situation would seem to preclude a review of the question at this late date. (*Andrews v. Glidden,* 122 Kan. 291, 251 Pac. 1078.) But if the question be yet open to review, on the theory that in the protracted course of this action Judge Hungate adopted Judge Whitcomb's construction of the will a couple of years later, we shall only take space to say that our construction of the will accords with that of the trial court and also with that given it by the Michigan courts whose jurisdiction of the subject matter and of the parties is unassailable by any evidence disclosed and established by this record. Kendall's will devised his entire estate in fee simple to defendant, and plaintiff had no interest therein.

Noting briefly the errors specified by plaintiff:

So long as each party has a fair opportunity to present his evidence it is ordinarily immaterial what ruling the trial court makes on the question of burden of proof. (*McCormick v. Holmes,* 41 Kan. 265, 21 Pac. 108; *Loveless v. Ott,* 121 Kan. 728, 250 Pac. 324; 5 Wigmore on Evidence, 2d. ed., 434, *et seq.*)

Error cannot be predicated on a ruling sustaining an objection to the introduction of evidence when the excluded evidence is not brought into the record in conformity with the code. (R. S. 60-3004; *Braymer Mfg. Co. v. Midwest & G. Oil Corporation,* 118 Kan. 439, 235 Pac. 847.)

The various errors based upon the court's ruling on the demurrer to plaintiff's evidence have been sufficiently discussed above. While the trial judge, in explaining his decision, said he could see nothing in plaintiff's case "except proof of a contract to make a will" and that such a contract "if valid, had not been breached," yet it is the propriety of a judgment that is important when it comes up for appellate review, not the soundness of the trial court's reasoning process by which that judgment is reached. (*Scattergood v. Martin,* 57 Kan. 450, 46 Pac. 933; *Davis v. Davis,* 121 Kan. 312, 320, 246 Pac. 982.) What was recently said in *Van Deren v. Heineke & Co.,* 122 Kan. 215, 218, 252 Pac. 459, is applicable here:

"Appellant's third specification of error is concerned with the vital question in this lawsuit—the propriety of the trial court's ruling on the demurrer. . . . It has been held that where the propriety of a demurrer to a petition is not clear, the opposing party may await the conclusion of plaintiff's evi-

dence, when it may thereby become quite manifest that plaintiff has no cause of action and the case may then be brought to a close by a ruling of the court on demurrer. (*Mercantile Co. v. Rooney,* 114 Kan. 840, 220 Pac. 1048, and citations.) Although a demurrer to a petition has been improperly overruled, no prejudicial error is committed if in the course of the trial, when the court pursuant to the introduction of testimony gets a better understanding of the nature of the action, it takes the case from the jury and sustains a demurrer to the cause or causes of action attempted to be stated in the petition. At all stages of a lawsuit prior to final judgment thereon, and before the expiration of the term in which such final judgment is rendered, and where no intermediate appeal is taken, the trial court has plenary power to correct or change its ruling as justice and a better understanding of the case and its issues may require. (*Burnham v. Burnham,* 120 Kan. 90, 93, 242 Pac. 124, and citations.)"

To conclude: Kendall never made such a will as alleged in plaintiff's petition. No family settlement was fairly pleaded, and none was proved. Moreover, a family understanding of a perfectly clear and simple testamentary devise could not change its text and significance when its came under judicial scrutiny. (*Vrooman v. Virgil,* 81 N. J. Eq., 301, 311.) The fact that the trial court (Judge Whitcomb) made no order following its construction of the Kendall will is immaterial; the order was withheld but the construction of the will was not, and that construction is conclusive against plaintiff. (*Andrews v. Glidden,* supra.) Plaintiff's whole action was fundamentally defective in being based upon an altogether erroneous and untenable construction of Kendall's will. That defect vitiated all that followed, including the agreements of November 14 and 17, 1921.

The court is invited to discover error in the trial court's rather pointed condemnation of the piecemeal methods by which this case has been tried. We see nothing approaching error in this incident (*American Automobile Ins. Co. v. Clark,* 122 Kan. 445, 448, 252 Pac. 215); and indeed the court's remarks did not occur in the course of the trial but only after judgment had been pronounced, when counsel were endeavoring to persuade the court to change that judgment.

The record discloses no prejudicial error, and the judgment is affirmed.

HARVEY, J., not sitting.