No. 22,745.

FLORENCE HIATT, *Appellee*, v. SOVEREIGN CAMP OF THE WOODMEN OF THE WORLD, *Appellant*.

SYLLABUS BY THE COURT.

FRATERNAL BENEFIT INSURANCE—*False Statements in Application for Certificate Avoid the Certificate*. The law declared in the syllabus of the preceding case (*Glasgow v. Woodmen of the World*, ante, p. 354) is applied, and *further held*, that questions asked upon an application for a beneficiary certificate as to whether or not the applicant ever had certain diseases, and whether he had ever consulted or been treated by a physician for any disease or injury during the preceding five years, are material, and that findings showing that his answers to these questions were false operate to annul the certificate.

Appeal from Wyandotte district court, division No. 2; FRANK D. HUTCHINGS, judge. Opinion filed July 10, 1920. Reversed.

*Edwin S. McAnany, Maurice L. Alden, Thomas M. Van Cleave,* all of Kansas City, *John T. Harding, B. F. Deatherage, D. A. Murphy,* and *Paul R. Stinson,* all of Kansas City, Mo., for the appellant.

*E. A. Enright,* of Kansas City, for the appellee.

The opinion of the court was delivered by

PORTER, J.: This appeal from a judgment in plaintiff's favor upon a beneficiary certificate issued by the defendant to Sylvester T. Brown, who was then the husband of the plaintiff, is in many respects a companion case to the preceding one (*Glasgow v. Woodmen of the World,* ante, p. 354), and they were submitted together.

Substantially the same defense was made; the answer alleging that the insured made certain representations and warranties concerning his bodily health and whether he had been attended by physicians within the period of five years preceding the date of his application, and that the answers he returned to these questions were false. As in the preceding case, the court adopted an erroneous theory with respect to the provisions of chapter 226 of the Laws of 1907, General Statutes of 1915, sections 5290, 5291. The law as declared in the first and second paragraphs of the syllabus of the preceding case is controlling, and there remains only the question whether the findings of the jury with respect to the representations of the insured are contrary to the evidence and the law.

In his application the insured was asked the following questions, the answers to which are claimed to be false:

"Have you now or ever had any disease of the following-named organs, or any of the following-named diseases or symptoms: palpitation, shortness of breath, dropsy or dropsical swellings, fainting spells, enlarged veins, or any other symptoms of disease of the heart or blood vessels? Ans. No.

"Have you consulted or been attended by a physician for any disease or injury during the past five years? Ans. No.

"Have you ever had any disease or injury not referred to above? Ans. No."

The medical examiner for the defendant testified that he read to the insured all of the questions in the application and wrote down the answers exactly as the insured gave them; that the foregoing questions were asked of him, and to each of them he answered "No." The contention is that the answer to the first question was false, in that the insured had for a number of years been afflicted with enlarged veins or varicose veins of the leg. Dr. J. A. Dillon testified in substance: that he had been engaged in the practice for 25 years; within the period stated he treated Sylvester T. Brown professionally; Brown had a sudden fainting spell and was thought to be dying; the witness diagnosed the disease as pulmonary embolism; the patient afterwards developed phlebitis or inflammation of the leg and was laid up for some time; the witness was called in consultation two or three times with Doctor Koons, the family physician of Brown; the patient had the appearance of being a very sick man, was emaciated and pallid, and walked with very great difficulty.

Doctor Koons testified that he was well acquainted with Sylvester T. Brown; that five or six years before the trial he was called in haste to Brown's house to treat him professionally; that Brown had a stroke of the heart of some kind and had fallen; that when the witness reached the house he found him breathing with difficulty; that upon returning in the afternoon, or possibly the next day, Brown's condition was so serious that witness called Doctor Dillon in consultation, and they diagnosed the case as an inflammation and infection of the femoral vein; they found the patient suffering from phlebitis; that the witness continued to treat Brown off and on for several months, and during that time he improved, but the witness feared a return of the trouble and advised him against taking long walks or violent exercise; that the disease called phlebitis affects the circulatory system and causes the blood to clot where an inflammation starts and afterwards to adhere to the walls of the veins, which will sometimes obstruct the blood vessels, detaining the rate of circulation and causing a white inflammatory swelling; that there is a connection between this condition and embolism, which is likely to be produced by femoral phlebitis, and that it had this effect on Mr. Brown.

Doctor Michener, a physician and surgeon for 35 years, well acquainted with Sylvester T. Brown in his lifetime, testified that he treated him professionally in July, August, and September, 1914, and found him afflicted with a large varicose ulcer in the right leg, about as large as the back of his hand and a half inch in depth; that from the size and condition of the ulcer he thought it had been there for a year or more; that he put on a dressing and left it on several weeks, then split it and took it off, and that the ulcer was healing; that he recommended that Brown wear an elastic stocking in order to support the veins; and that after the veins became dilated as they were in this case, they seldom regain their tenacity, and need some artificial support. He advised the patient that it would be necessary to wear this stocking continuously, and that in case he failed to do so the veins would again become dilated, filled with blood, and become stagnant, and there would be a recurring ulcer. In his opinion and judgment, the ulcers on Brown's leg were incurable. He further testified that Brown and his wife came to Wichita about six months afterward, and that at that time the leg was in good condition; and that he further impressed upon Brown at that time the necessity of continuously wearing the rubber stocking because the veins would again become enlarged and the trouble return.

Doctor Cloyd, sovereign physician of the defendant, testified that the application for the beneficiary policy could not have been accepted without his approval, and would not have been approved if the application had disclosed that the applicant had suffered from enlarged veins in the leg, commonly called varicose veins, to the extent that it was necessary to have treatment by a physician.

The proprietor of a printing plant where the deceased at one time was employed, testified that he had occasion to notice the physical appearance of Brown, and that during part of two years he appeared to have a great deal of trouble with his leg, and every few weeks was laid off from work for two or three days at a time by reason of it; that he knew of Brown going to Wichita to consult a doctor; and that at times Brown had a limp when he walked.

In rebuttal, plaintiff offered the deposition of a witness who testified that he was instrumental in getting Brown to join

Hiatt v. Woodmen of the World.

the order and was present when he was examined by the local Camp physician, and that not more than ten minutes was occupied in the examination.  In answer to a direct question he said that Doctor Smolt, under the questions in the blank application entitled "Personal History," did not explain to Brown the meaning of the terms used, and to the best of his knowledge he did not hear Brown asked any questions concerning varicose veins, and did not hear any question about enlarged veins; that he heard the question asked, "Have you consulted or been attended by a physician for any disease or injury during the past five years?" and that Brown named Doctor Michener of Wichita.

·Sylvester T. Brown's death occurred on January 18, 1918, after an operation at a hospital in Newton for the relief of a ruptured appendix, and the physician who performed the operation and who filled out the death certificate stated that embolism was the cause of the death.  He was a witness, and testified that he was prompted to make this statement on account of the suddenness of the death and the character of the attack.  He also testified that when the appendix was removed there was found a congested, inflamed, gangrenous area near the end, and a perforation; that he did not observe any evidence of the existence of a blood clot causing the death; and that the operation might have contributed.

The jury returned the following special findings:

"Q. 1.  Did Sylvester T. Brown sign an application through Hazelwood Camp No. 15, for membership in defendant society and for participation in its beneficiary fund, in which he was asked this question: 'Have you now or ever had any disease of the following-named organs or any of the following-named diseases or symptoms: Palpitation, shortness of breath, dropsy or dropsical swelling, fainting spells, enlarged veins or any other symptoms of disease of the heart or blood vessels?  Answer: No.

"Q. 3.  At the time Sylvester T. Brown signed the application for membership, did said application have this question and answer: 'Have you consulted or been attended by a physician for any disease or injury during the past five years?  Answer: No.'  Answer: Yes.

"Q. 4.  Did Sylvester T. Brown, prior to July 25, 1914, and within five years before January 3, 1916, consult, or had he been attended by Dr. C. C. Koons of Larned, Kansas, for phlebitis of the right femoral vein?  Answer: Yes.

"Q. 5.  Did Sylvester T. Brown consult or was he attended by Dr. J. A. Dillon of Larned, Kansas, prior to July, 1914, and within five

years prior to January 3, 1916, for phlebitis of the right femoral vein, or any other disease or ailment? Answer: Yes.

"Q. 6. Did Sylvester T. Brown consult or was he attended by Dr. H. Michener, during July, August, and September, 1914, for ulcers of the right leg and enlarged veins? Answer: Yes.

"Q. 7. Did Sylvester T. Brown answer the question in the application, 'Have you consulted or been treated by a physician for any disease or injury during the past five years,' by saying, 'Dr. Michener.' Answer: Yes.

"Q. 8. Did Sylvester T. Brown answer the question asked him by Dr. A. E. Smolt in his application for benefit certificate in good faith and without intentional evasion or suppression of matters inquired about by said questions? Answer: Yes.

"Q. 9. Was the death of Sylvester T. Brown caused by a diseased appendix and the operation to remove the same? Answer: Yes.

"Q. 10. Was the cause of Sylvester T. Brown's death embolism? Answer: No."

Upon the return of the verdict and special findings, the defendant moved to set aside the answers to special questions 1, 7, 8, 9 and 10, and for judgment for defendant on the findings. The motion to set aside the findings was overruled except as to finding No. 10; that was set aside, obviously, because the findings, in the opinion of the court, showed that the cause of Brown's death was embolism. It is clear, in our opinion, that several of the other findings should have been set aside. In finding No. 1 the jury say that Brown did not file an application for the insurance "in which he was asked" the question, "Have you now or ever had any disease of the following named," etc. We think the finding is contrary to the evidence. In support of the finding the plaintiff contends that it is correct because there was no evidence to show that the insured was orally *asked* the question. If the answer of the jury was based upon this technicality, it was simply an evasion of the question. The application, with questions and answers, was in writing, and the question submitted to the jury referred to the written application. The testimony of the witness Lyle, who claimed to have been present at the examination and that to the best of his knowledge he did not hear any question asked about varicose veins or enlarged veins, is negative in character and not sufficient to overcome the written application and the positive testimony of the physician who made the examination. Finding No. 7, in which the jury say that to the question,

"Have you consulted or been treated by a physician for any disease or injury during the past five years," Brown answered as follows: "Dr. Michener," is contrary to the evidence, and should have been set aside. The testimony of the witness Lyle, being in the form of a deposition, this court is as qualified to pass upon its weight as the trial court and, in our opinion, it is not sufficient to overcome the written application. Finding No. 8, with respect to the good faith of the insured in answering the questions, is not, in our opinion, sustained by the evidence.

Finding No. 3, that the insured signed an application for membership in which he answered that he had not consulted or been attended by any physician for any disease or injury during the past five years, and findings Nos. 4, 5 and 6, that he had within that time consulted and been attended by three physicians for phlebitis of the right femoral vein, and the statement in the written application that he had never had any disease such as enlarged or varicose veins, established the falsity of the representations and warranties upon matters which were material, and it follows that the false answers of the insured to questions of this character annul the certificate.

Reversed and remanded, with directions to enter judgment for the defendant.