No. 23,953.

Iva B. Hayslip, *Appellee,* v. The Great American Life Insurance Company, *Appellant.*

SYLLABUS BY THE COURT.

1. Insurance—*Defense of Nondelivery of Policy and Conspiracy to Defraud—Facts for Jury.* In an action to recover on a policy of life insurance, where the defenses pleaded were nondelivery of the policy and conspiracy on the part of the insured and others to defraud the insurance company, the issues thus raised presented questions of fact for a jury's consideration, and the jury's determination thereof is conclusive, and ordinarily it serves no purpose on appeal to reargue the evidence on which such facts were determined.

2. Same—*Alleged False Statements in Application.* Where the insured died of double pneumonia following an attack of influenza, an alleged false statement in the insured's application touching the cause of his father's death, which was either accidental gunshot wound or suicide, is immaterial. (Gen. Stat. 1915, § 5290.)

3. Trial—*Excluded Evidence—Not Reviewable.* Rulings on excluded evidence are not subject to review unless such evidence is brought on the record in support of the motion for a new trial.

4. Same—*Remarks of Court—Nonprejudicial.* Record examined to review a complaint in appellant's brief touching prejudicial remarks, comments and conduct of the trial court, and not sustained.

5. SAME—*Instructions.* Record examined to review instructions given and refused, and no error discerned therein.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion filed November 4, 1922. Affirmed.

*A. C. Malloy, R. C. Davis,* and *Warren H. White,* all of Hutchinson, for the appellant.

*Charles E. Branine, Harold R. Branine,* both of Hutchinson, *C. W. Burch, B. I. Litowich,* and *LaRue Royce,* all of Salina, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was' an action to recover on a life insurance policy. The defense was nondelivery of the policy, and conspiracy on the part of the insured and the local insurance agent and the local medical examiner to defraud the insurance company.

On these issues the cause was tried. A general verdict and answers to special questions were returned in plaintiff's favor; and defendant appeals from the judgment rendered thereon.

Defendant's brief discusses many matters which were a fair subject of controversy in the trial court but which are all settled by the jury's verdict. As in *Upton v. Pendry,* 110 Kan. 191, 203 Pac. 300, it may be here said: "This court is not trying this lawsuit; its jurisdiction is limited to a review of errors alleged to have been made by the district court which did try this lawsuit." This disposes of most of the matters argued in the defendant's behalf; it settles the question whether or not the policy had been delivered to the insured in his lifetime; settles the question whether there was a conspiracy to defraud the company; settles the question whether the insured made false statements on material matters in his application for insurance; and settles every disputed question of fact upon which there was any competent and substantial testimony. (*Bruington v. Wagoner,* 100 Kan. 439, 164 Pac. 1057.)

Among the matters complained of in defendant's brief is one concerning the exclusion of some testimony touching the death of the insured's father. In his application for insurance, the insured, William S. Hayslip, stated that his father had died of an accidental gunshot wound. The excluded evidence was designed to show that the father had committed suicide and that the insured was aware of that fact. In this case such evidence was immaterial. (Gen. Stat. 1915, § 5290.) The insured did not die of suicide. He died of dou-

Hayslip v. Insurance Co.

ble pneumonia following an attack of influenza, during the "flu" epidemic in December, 1918.

In *Newton v. Insurance Co.*, 95 Kan. 427, 148 Pac. 619, it was said:

"The withholding or misrepresentation of facts in an application for life insurance will not defeat the insurance policy unless those facts, thus withheld or misrepresented, pertain in some degree to the malady which occasions the death of the assured, following section 4200 of the General Statutes of 1909." (Syl. ¶ 1.)

Error is urged on the trial court's rejection of "offers of proof of current newspaper reports; current rumor concerning the suicide of Albert Hayslip" (insured's father). This rejected evidence—if it could be characterized as such—was not brought on the record in support of the motion for a new trial, so neither its competency nor materiality can now be considered. (*The State v. Ball,* 110 Kan. 428, 432, 433, 204 Pac. 701.) Complaints touching other matters excluded are not reviewable for the same reason.

An attempt is made to base error on "voluntary prejudicial remarks and comments of the court" in certain given instances, and "also by way of facial expression, gestures, voice inflection and those numerous exhibitions which one unconsciously manifests when sympathies are enlisted on one side of a controversy."

The record does not justify any such criticism of the trial court. In connection with its rulings and in explanation of them, as the trial progressed, the court did sometimes make remarks. For example, an officer of the defendant testified that in the course of his investigation of this claim for insurance he called on Doctor Miers, who had served the defendant as local medical examiner and who is one of the parties alleged to have been in the conspiracy to defraud the defendant. There had been evidence tending to show that the insured had left his insurance policy in the custody of Doctor Miers. Defendant's officer testified:

"He showed me the Hayslip policy of life insurance in the defendant company, insuring the life of Mr. Hayslip.

"A. He showed me the receipt that is usually given with—delivered to the agent to be delivered to the applicant, showing the payment of the first year's premium, and also the note that Mr. Hayslip had given in payment of the life insurance premium.

"Q. State whether at that time he claimed to own this note—had cashed the note?

"[Counsel for plaintiff] We object to that as calling for the conclusion of

the witness, incompetent, irrelevant and immaterial. We are not bound by anything that Dr. Miers may have said or done, no .foundation having been laid for this testimony.

"[Counsel for defendant] If this man was chosen as the agent for the purpose of holding these papers, and this office safe was selected as a depository for those papers, then any act that he did with reference to those particular papers so deposited would be binding upon the plaintiff. They have introduced evidence in this case to show that Robert McCracken held and retained this note at all times there in his wallet in his pocket or after the delivery of the policy in his files at his home until he brought it down to Salina and let it be paid off. Now, we have the right to show by this witness that the man who was chosen as the agent to hold these papers, stated whether or not he had bought that note from McCracken.

"By the Court: Wouldn't the doctor have the right to advance money on this note if he wanted to take it up, or do anything he wanted to do with it?

"[Counsel for defendant] Your Honor will understand me if I ask to have an exception taken to that question.

"By the Court: Sure."

We discern neither prejudice nor impropriety in this instance. Others of like nature noted in the record have not been overlooked, but they disclose nothing which would justify discussion.

Fault is also found with the instructions given and refused. Those given fully and fairly covered the matters in issue, those refused were properly denied. Despite the lengthy abstract and brief presented by the defendant for our consideration, and notwithstanding the large sum involved in this lawsuit, the issues were simple and clearly defined, and a painstaking review thereof suggests nothing approaching reversible error and nothing worthy of discussion.

Affirmed.

BURCH, J., not sitting.