No. 34,269

JAMES W. JACKSON, *Appellee*, v. THE NATIONAL LIFE AND ACCIDENT INSURANCE COMPANY, *Appellant*.

(90 P. 2d 1097)

Opinion filed June 10, 1939.

*Robert Stone, James A. McClure, Robert L. Webb, Beryl R. Johnson* and *Ralph W. Oman*, all of Topeka, for the appellant.

*Charles Rooney* and *John W. Lewis*, both of Topeka, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action on a life insurance policy. Judgment was for plaintiff. Defendant appeals.

The petition alleged the existence and addresses of the parties; that defendant issued the policy in the amount of $1,000 on the life of deceased on February 3, 1937; that plaintiff was named beneficiary in the policy; that the insured died of natural causes on August 12, 1937; that proof of death had been furnished and demand for payment made and refused. Judgment was asked for the face of the policy.

In its answer the defendant admitted the issuance of the policy, the death of insured, the demand for payment, its refusal, and alleged that defendant had tendered to plaintiff a payment of three quarterly premiums, with interest, and that this tender had been refused by plaintiff. The answer further alleged that defendant denied any liability under the policy because of fraudulent answers on the part of insured to certain questions asked her at the time she made application for the policy; that insured knew at the time she made application for the policy and at the time of its delivery to her that she had made fraudulent answers in her application; that defendant did not know that these answers were false, and would not have issued the policy had it been informed of the fraud on the part of insured when the application was executed; that these fraudulent answers were made with intent to defraud the defendant. The premium paid was tendered into court.

Defendant also filed a cross petition, in which it alleged that it issued the policy, relying solely on the answers and representations made by insured at the time she made the application; that defendant delivered the policy still believing these answers to be true; that after issuing the policy and delivering it, and after the death of insured, defendant learned that the insured had made false and fraudulent answers to questions propounded to her; that having learned of the fraud on the part of insured defendant denied liability on the policy and tendered to plaintiff the premium paid; that the fraud practiced on defendant by the insured made the policy void at its inception, and it was so considered by defendant at the time settlement was refused. The cross petition then alleged that for the purpose of inducing the defendant to issue the policy the insured made, among other statements, the following:

"18. Have you ever had any ailment or disease of:
　　"(A) Brain or nervous system? No.
　　"(B) Heart or lungs? No.
　　"(F) Have you ever consulted a physician for any ailment or disease not included above? No.

"23. State names and addresses of physicians you have ever consulted and give the occasion by reference to question numbers and letters above. None.

"26. I hereby agree and declare on my own behalf and in behalf of any person who may have or claim any interest in any policy issued herein:

　　"(1) That each of the statements contained herein is full, complete, true, and without exception, unless such exception is noted, and made as inducements to the execution of a policy of life insurance for which this is an application.

　　"(2) That the proposed contract shall not be effective until the policy has been issued and the first premium actually paid and accepted by the company and this policy has been delivered to and accepted by me in my lifetime, and while in good health, . . .

"29. Signature of the person applying for insurance:"

The cross petition further alleged that insured knew at the time of her application for the policy that she had for some time suffered an ailment of the heart and the stomach; that she knew of her own knowledge that for sixteen months or more prior to January 26, 1937, when the application was executed by her that Dr. E. W. Irish had on numerous occasions treated her for attacks of stomach trouble and had advised her that she had an ailment of the heart; that insured knew at the time the policy was delivered to her that she was not in good health; that with this knowledge she answered the questions as quoted in the application and accepted delivery of the policy; that these answers were made with intent to deceive the defendant and the policy would not have been issued had defendant known the truth; that the answers to the questions were false and fraudulent representations and the acceptance by insured of the policy when she was not in good health made the policy void at its inception. The prayer was that the policy be rescinded.

For a reply the plaintiff filed a general denial and for an answer to the cross petition plaintiff denied that the insured made false answers in her application and denied that insured had ever been advised that she had a heart ailment prior to January 26, 1937, and denied that she had consulted a physician and concealed it.

The cause was submitted to a jury, which returned a verdict for the plaintiff for the face value of the policy. Special questions were asked and answered, as follows:

"1. Do you find that Clara C. Jackson, the insured, prior to January 26, 1937, the date of the medical examination for the insurance policy involved in this suit, consulted with E. W. Irish as to her physical condition? A. No.

"2. If your answer to the above question is in the affirmative, then state on what dates she had such consultations, or the period of time over which they were had. A. ———

"3. Did Clara C. Jackson tell Dr. James G. Stewart, on August 10, 1937, that she had had trouble with her heart for several years? A. No.

"4. Do you find that Clara C. Jackson was in good health at the time of the delivery of the policy in question, to wit, February 3, 1937? A. Yes.

"5. Do you find that Clara C. Jackson, the insured, in April of 1936 and September of 1936, received chiropractic treatments? A. Yes."

A motion to set aside certain of these answers because they were contrary to and not supported by the evidence was sustained as to question number one and overruled as to the others. A motion by the defendant for judgment notwithstanding the verdict was overruled. Judgment was entered in the amount of the verdict. The appeal is from that judgment.

One of the grounds in the motion for a new trial was that the verdict was contrary to the evidence. This was also the ground on which defendant asked that the answers to the special questions should be set aside.

The first argument of defendant on appeal is that the trial court erred in denying the above motions because the evidence conclusively showed that the insured made false and fraudulent representations when she stated in her application that she had never consulted a physician. There can be no doubt that insured had consulted a chiropractor a few months before she made her application. There was evidence of this and the trial court set aside the negative answer to question No. 1 on account of this evidence. Defendant devotes a considerable part of its brief to an argument that the ruling of the court on this motion was erroneous because the word "physician" as used in the application included chiropractor.

We have concluded that it will not be necessary to decide that question. In order to decide the question of the effect of the answer of insured to question No. 1, we must consider the testimony of Dr. E. W. Irish. This witness testified that he was a chiropractor; that the insured consulted him on March 24, 26 and 31 of 1936, several times in April and again on March 13, 1937. On these occasions she complained to him of her physical condition; that he examined her and diagnosed her trouble as acute gastritis; that she never quit her work and the treatments he gave her as a chiropractor

were adjustment and massage on the abdomen. It will be noted that the insured made her application on January 26, 1937, just a few months after she had consulted chiropractor Irish.

A pertinent statute to be considered on this question is G. S. 1935, 40-418. That section reads as follows:

"No misrepresentation made in obtaining or securing a policy of insurance on the life or lives of any person or persons, citizens of this state, shall be deemed material or render the policy void unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable."

There can be no doubt that this insured died of myocarditis. Whether acute or chronic will be discussed later. There is no such a connection between acute gastritis and myocarditis as to enable us to say that the gastritis for which she was treated by the chiropractor actually contributed to the contingency from which insured died. We are not favored with a definition in the record as to what gastritis is. In the absence of some such showing we cannot say there is any such connection at all. The question is whether or not the insured made the answers fraudulently. In *Day v. National Reserve Life Ins. Co.*, 144 Kan. 619, 62 P. 2d 925, this court considered a case where the insured had answered in the negative when asked whether he had ever consulted a physician. This court held that the answer was not a warranty and that good faith in making the statement was sufficient even though it was incorrect as a matter of fact. (See, also, *Sharrer v. Insurance Co.*, 102 Kan. 650, 171 Pac. 622.) In addition to what has been said, the insured was not asked whether she had consulted a chiropractor. Furthermore, she submitted to an examination by a physician in the employ of the defendant and this physician approved her application. While an argument is made that the word "physician" as used in the application meant "chiropractor" under our statutes and decisions, still it would not do to presume that the insured thought the one word included the other so as to make her guilty of fraud under the circumstances we have here.

The defendant next argues that the evidence conclusively shows that the insured made false and fraudulent representations when she stated in her application that she had never had any disease of the heart. This argument is based largely on the testimony of Irish, that he told her at the time she consulted him that she had a nervous heart. This record does not disclose satisfactorily just what a nerv-

ous heart is. At any rate, since a consideration of this question requires a rather detailed examination of the testimony, we will deal with it, together with the argument that the evidence conclusively shows that insured was not in good health at the time the policy was delivered. The latter depends upon a provision in the policy, which reads as follows:

"This policy shall not take effect until the first premium hereon shall have been actually paid and the policy actually delivered to the insured during the lifetime and good health of the insured."

This policy was issued February 3, 1937, and insured died August 12, 1937. Defendant claims that the evidence compels a conclusion that insured was not in good health at the time the policy was issued and delivered. This contention requires an examination of the testimony. We have seen that the chiropractor examined and treated her for gastritis for a few months before the policy was issued. There is no contention here, however, that insured was ill with gastritis when the policy was delivered. It is the testimony of the chiropractor that insured had a fast heart or nervous heart, to which defendant calls attention here. Our attention is called to that testimony and we are asked to consider it in connection with that of the last doctor who saw insured, and to reach a conclusion thereon that insured was suffering with the malady that caused her death at the time the policy was delivered.

There seems to be no doubt that insured died from myocarditis. The trouble with which we are confronted is that there are two types of myocarditis—acute and chronic. If insured died of chronic myocarditis then she was probably suffering with it when the policy was delivered. If, on the other hand, she died of acute myocarditis then she might have been in good health at that time. On this question we have the testimony of a heart specialist who saw insured during the afternoon of the day she died. This doctor read from his office memorandum that insured testified "heart has been fast periodically." He further testified that she stated to him that she had always had periods of rapid heart; that on the occasion of this visit she was suffering from a heart fibrillation; that she had bad teeth and defective gums. This witness made a very fair and careful statement of the action of the heart and of the difference between chronic and acute myocarditis. It would add but little to this opinion to set out this testimony in detail. The witness testified that acute myocarditis might be caused by infection from badly infected

teeth or rheumatic virus; that the only positive way to distinguish the two types was by a post-mortem examination of the heart and that was not done in this case; that if chronic myocarditis had existed for any length of time there would have been dropsy of the feet, and there was none in this case. He also testified that myocarditis has no relation to pain in the stomach and that insured could have been in splendid health in January, 1937, and still have died of acute myocarditis. There was other testimony from non-medical witnesses that the appearance of insured had been that of a healthy person and that she worked regularly as a waitress in a restaurant. In order for us to hold that there was no substantial evidence to support the verdict for the plaintiff in this case it would be necessary for us to accept all the testimony and opinions of Doctor Stewart, the specialist, detrimental to the plaintiff and disregard all his other testimony and a great deal of other evidence. We cannot do that. We must give the plaintiff the benefit of all the inferences and conclusions that may be drawn from the evidence. This record required the submission to the jury of the question of the health of the insured at the time of the delivery of the policy. (See *Priest v. Life Insurance Co.*, 116 Kan. 421, 227 Pac. 538, also *Van Ross v. Metropolitan Life Ins. Co.*, 134 Kan. 479, 7 P. 2d 41.)

An argument is made by defendant that the answers of the jury to certain special questions should have been set aside because they were not sustained by the evidence. What has already been said here disposes of that argument.

The judgment of the trial court is affirmed.