No. 39,154

GEORGE W. HAWKINS, MARJORIE J. WILLIAMS, and ALICE L. MURRAY, *Appellees,* v. NEW YORK LIFE INSURANCE COMPANY OF NEW YORK, NEW YORK, a Corporation, *Appellant.*

(269 P. 2d 389)

Opinion filed April 10, 1954.

W. A. Kahrs, of Wichita, argued the cause, and Robert H. Nelson, Clarence N. Holeman, and Wilbur D. Geeding, all of Wichita, and R. L. Letton, of Pittsburg, were with him on the brief for the appellant.

*Don Musser,* of Pittsburg, argued the cause, and *Sylvan Bruner, L. M. Resler,* and *Morris Matuska,* all of Pittsburg, and *C. R. Stauffacher,* of Columbus, were with him on the brief for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover on a policy of life insurance and from a judgment in favor of the plaintiffs the defendant appeals.

We note that the policy, the execution and delivery of which was admitted, was issued on March 16, 1948, effective as of February 11, 1948, and provided that New York Life Insurance Company, hereafter called the defendant, would pay $2,000 to Esther R. Hawkins, the insured, on the anniversary of the policy on which her nearest birthday was sixty-five if she were then living, or to her beneficiaries Marjorie J. Williams and Alice L. Murray, her daughters, one-fourth to each, and to George W. Hawkins, her husband, two-fourths, upon proof of her death before the maturity date; or the sum of $4,000 in the same proportions if such death resulted before the maturity date from accidental means, as limited by the provisions of the policy. Other parts of the contract of insurance will be mentioned later.

In their discretion and as they had a right to do, the above named beneficiaries filed their petition in the district court of Crawford county, alleging issuance of the policy and that while it was in force and on January 25, 1949, the insured died from accidental barbiturate intoxication without any intent on her part that death would result, the accident consisting of the fact she did not intend for the amount taken by her to cause any injury; that plaintiffs, as sole beneficaries named in the policy, had fully complied with all conditions precedent to establishing liability and had made demand upon the defendant company to carry out the contract, and it had failed to do so. Plaintiffs prayed judgment for the sum of $3,000.

The defendant's answer admitted the issuance of the policy of insurance and alleged that the insured made various and fraudulent representations and warranties for the purpose of obtaining the policy of insurance and thereby defrauding the defendant company; that in her application she withheld information concerning her attendance by various doctors and physicians and failed to disclose information concerning such attendance by doctors and physicians which were material to the risk involved, setting forth details. Defendant further alleged that insured with intent to commit suicide

took into her body excessive and large amounts of barbiturates and as a result entered into a coma condition and died, and by reason of the act of self-destruction by insured the beneficiaries are barred from recovery. Defendant alleged insured knew of her condition when she applied for insurance and neither divulged her condition nor set out in her application she had been attended by a physician within five years preceding her application and as a result of the fraud practiced the policy of insurance was void from its inception and of no effect; that tender of premiums paid was made and rejected by plaintiffs and was again made and paid to the clerk of the court for plaintiffs' benefit subject to the further order of the court. By a further pleading denominated "counter claim" defendant sought to have the policy of insurance set aside and cancelled.

Plaintiffs' reply to the answer and answer to the counter claim was a general denial.

A trial was had by a jury. At the conclusion of plaintiffs' evidence defendant demurred, the demurrer being overruled. At the conclusion of all the evidence, defendant moved the court for a directed verdict in its favor, which motion was denied. The court instructed the jury, defendant objecting to certain instructions later mentioned. After consideration the jury returned its general verdict in favor of the plaintiffs. In due time the defendant filed its motion for a new trial and its motion for judgment notwithstanding the verdict. After argument thereon, these motions were denied, and judgment in favor of plaintiffs was entered on the verdict.

Defendant perfected its appeal to this court specifying error as to matters hereafter discussed.

Appellant first contends, under one heading, that the trial court erred in its refusal to sustain its demurrer to the appellees' evidence, in its refusal to direct a verdict in its favor, and in submitting the case to the jury. Disposition of the contention requires a review of the evidence.

The application for the policy of insurance was attached to the policy and under G. S. 1949, 40-420 (2) the two constitute the contract between the parties. For present purposes it may be said the controversy does not arise from the terms of the policy, but from certain answers returned to the medical examiner as a part of the application. In answer to Question 8 the applicant stated that she had never consulted a physician for any ailment of: (A) The brain or nervous system; (B) The heart, blood vessels, or lungs;

(D) The skin, middle ear or eyes; but had for: (C) The stomach or intestines, liver, kidneys or bladder, naming the ailment or disease as paint poison in 1944, the duration as one week and the severity as moderate. No name of any physician is shown, although there was a blank provided therefor. The tenth question was: "Have you ever had, or ever consulted a physician or practitioner for, any ailment or disease not included in your above answers?" The answer was: "No. Only for ord. dis. of childhood." The eleventh question was: "What physicians or practitioners, if any, not named above, have you consulted or been examined or treated by within the past five years?" The answer was: "None." The next to the last paragraph read: "On behalf of myself and of every person who shall have or claim any interest in any insurance made hereunder, I declare that I have carefully read each and all of the above answers, that they are each written as made by me, and that each of them is full, complete and true, and agree that the Company believing them to be true shall rely and act upon them accordingly."

For convenience we here note that under the last above mentioned statute it is provided:

". . . that all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties . . ."

At the commencement of the trial it was stipulated that defendant's chief medical officer, if present, would testify that he considered the application of the insured and relied on the answers therein and there was no reason to doubt (believe?) that the answers were untrue, false or incomplete and if they had disclosed that on May 8, 1945, and again on December 17, 1945, June 17, 1946, January 17, 1947, and June 17, 1947, the applicant had been examined by Dr. Stanley E. Davis, the application would have been suspended until defendant had received full information from him, and if the Company had known the applicant had consulted Doctor Davis on those dates and his examination disclosed an ovarian cyst which was still present on June 17, 1947, the application would have been denied.

Extensive review of the oral testimony adduced by the plaintiffs is not necessary for present purposes. George W. Hawkins, who was the husband of the deceased insured, testified they moved to Columbus, Kansas, in 1945, and she worked in the Fashion Shop, which she purchased in November, 1948. The couple had four

children, a son who died in military service prior to 1945 but whose death was not immediately known, two daughters, and another child which died in infancy. The mother grieved over the death of the son, but had not consulted a physician except for colds. She had been treated by Doctor Fuller in 1944. After moving to Columbus she went to Doctor Davis for a checkup and he found a cyst on one of her ovaries, and she returned to him every six months for a checkup. While consulting Doctor Davis, she was not sick, she was not sick or hospitalized until her death. She took an active part in civic and lodge activities and attended church occasionally. Between Christmas and New Years she moved her business location but nothing happened which caused her any unusual concern. She died January 25, 1949, but was not sick the week preceding her death except she could not sleep. On Thursday before her death the doctor gave her two pills but she didn't take them. Mrs. Hawkins had secured medication during the fall before Christmas or immediately thereafter to enable her to rest. On Saturday preceding her death (the following Tuesday) she was about as usual. On Sunday she was up and had breakfast. He went out and when he returned about 1:00 p. m. she was asleep and slept on the rest of the day. He called Doctor Davis and later was advised to take his wife to a hospital in Pittsburg; that was done and she died the following Tuesday morning. He further testified his wife went to see Doctor Davis on Thursday to get something to make her sleep. He knew she obtained medication but did not know the date. Other testimony as to consulting the doctor and that she obtained sleeping tablets; that she was in a coma and never regained consciousness need not be set forth. The certificate of death admitted in evidence showed the cause of death to be "Barbiturate intoxication" with an interval of 36 hours between onset and death and the date of death to be January 25, 1949. The testimony of the two daughters, amplifying that of the father as to the mother's condition, medication and death need not be set forth. We here note there is no testimony in connection with the application for insurance that the insured gave truthful answers to all questions but that the medical examiner did not correctly note them.

The gist of appellant's argument is that the insured knowingly stated she had not consulted or been treated by a physician within five years prior to her application as disclosed by appellees' evidence, which likewise disclosed the statements were not true; that

the appellant relied on the answers made by her; that had it known she had been examined by Doctor Davis and that the examination disclosed an ovarian cyst, her·application would have been denied; that her failure to give positive answers to direct questions and the misrepresentations made by her were material to the risk and plaintiffs as her beneficiaries are barred from recovery as a matter of law; that such being the case the appellant's demurred to plaintiffs' evidence should have been sustained, or following introduction of evidence by the appellant which merely amplified the showing made by plaintiffs, appellant's motion for a directed verdict should have been allowed.

Assuming that general rules of law with reference to fraud and consequent effects apply, and that under such rules the plaintiffs may not recover, we have to consider the effect of a statute first enacted as Laws 1907, ch. 226, sec. 1, which has never been amended and which now appears as G. S. 1949, 40-418. It reads as follows:

"No misrepresentation made in obtaining or securing a policy of insurance on the life or lives of any person or persons, citizens of this state, shall be deemed material or render the policy void unless the matter misrepresented shall have actually contributed to the contingency or event on which the policy is to become due and payable."

In view of our conclusion later stated, we shall make a rather extensive review of our decisions wherein the above statute has been referred to or its principles applied, whether referred to in the briefs or not.

The first specific reference to the statute in our decisions was in *Green v. Annuity Association*, 90 Kan. 523, 531, 135 Pac. 586, where it was said that reference was made in the briefs to G. S. 1909, § 4200 (Laws 1907, ch. 226, §·1) relating to misrepresentation in obtaining insurance but it was not necessary to the decision to determine the effect of the statute.

The second case where the statute was specifically referred to is *Newton v. Insurance Co.*, 95 Kan. 427, 148 Pac. 619. There the jury found that the insured had given truthful answers to certain questions asked in the application and this court said the findings of the jury would not be disturbed. Referring specifically to a finding about a question as to whether any company had examined him without issuing a policy, this court said:

"We can not bring our minds to the conclusion that the jury's first finding of fact on that point should be overturned. We prefer to let it rest on the finding of the jury rather than to permit it to be governed by section 4200 of

the General Statutes of 1909. Indeed we have grave doubt as to whether a misrepresentation of this sort would not be material in every application for an insurance policy. An insurance company has a right to be put on its guard by a frank and truthful answer to a question of this sort. We could not say as a matter of law that a misrepresentation of this sort is ever immaterial." (1. c. 432.)

In addition, later statement is made that "The findings of fact made by the jury will not be disturbed." (1. c. 433.) A reference is also made to the statute being incorporated in the instructions. The opinion contains no comment on the statute itself, but the holding of this court, reflected by syllabus ¶ 1, was:

"The withholding or misrepresentation of facts in an application for life insurance will not defeat the insurance policy unless those facts, thus withheld or misrepresented, pertain in some degree to the malady which occasions the death of the assured, following section 4200 of the General Statutes of 1909."

In *Sharrer v. Insurance Co.*, 102 Kan. 650, 171 Pac. 622, the above statute was mentioned and partially quoted but there was no comment as to its force and effect. The decision of this court affirming a judgment for the plaintiff was, in effect, that testimony showed that plaintiff answered questions in good faith and the jury had fair grounds for finding claims of fraudulent statements were not sustained.

The above statute was held to have no application in actions on fraternal benefit insurance policies in *Glasgow v. Woodmen of the World*, 107 Kan. 354, 191 Pac. 470, and *Hiatt v. Woodmen of the World*, 107 Kan. 359, 191 Pac. 472, a rule followed in *Steele v. Woodmen of the World*, 115 Kan. 159, 222 Pac. 76, nor for recovery of health benefits under a combined health and accident insurance policy in *Russell v. United Casualty Co.*, 123 Kan. 282, 255 Pac. 65. Compare, however, *Elliff v. Inter-State Business Men's Acc. Co.*, infra.

In *Becker v. Surety Co.*, 105 Kan. 99, 181 Pac. 549, decided in 1919, the action was by the beneficiary to recover for the death of her husband under an accident and health insurance policy. The action was tried on an agreed statement of facts from which the trial court decided that certain answers in the application were untrue and would have had the effect of avoiding the policy except for the provisions of the above statute. In considering the statute and its effect this court, Chief Justice Johnston dissenting, said:

"The representations having been made and being untrue, the question arises: Are they rendered innocuous by the statute quoted? Under it the

misrepresentations are immaterial unless the matter misrepresented actually contributed to the accidental death of the insured. It is the view of the court that false representations as to a physical condition which was in no way related to the death of the insured, do come within the exemption of the statute, and would not defeat the policy. . . . The court holds that a different rule applies where the facts misrepresented or fraudulently concealed are such as increase the moral risk, and which, if known by the insurer, would probably have prevented the issuance of the policy. Misrepresentations of this character, although they do not directly contribute to the contingency of death, are deemed not to be within the purpose of the statute. Such misrepresentations never can contribute to the contingency insured against, and therefore it is held that the statute does not apply to or render them harmless." (l. c. 102.)

And the court held:

"False representations by the insured which affect the moral risk, such as that he had not applied for or taken out other insurance of the same kind, or that he had never received indemnity for accident or illness, while they cannot be regarded as having directly contributed to the accidental death of the insured, are not within the scope or purpose of the statute mentioned, and are not rendered immaterial by the statute." (Syl. ¶ 3.)

We note the next two cases only to show the course of decision.

In *Klein v. Farmers & Bankers Life Ins. Co.,* 132 Kan. 748, 297 Pac. 730, the insured stated to a medical examiner that he had not consulted a physician within the past ten years; that he believed he was in good health; that no medical examiner had expressed any unfavorable opinion as to his health or insurability and that he had never had any disease or injury. The policy was never delivered as he was sick when it was ready for delivery. Klein died of pernicious anemia and his beneficiary brought an action on the policy. She was denied recovery. Reference is made to the opinion for details as to false answers. Although it may be said the opinion held that the policy was not delivered because the insured was not in good health to receive it, there is a further holding that the subject matter of inquiries made was material, the answers were false and necessarily operated to defeat the contract of insurance. No specific reference is made to the statute quoted above.

In *Scott v. National Reserve Life Ins. Co.,* 143 Kan. 678, 56 P. 2d 76, the insured had answered in the negative a question whether a life insurance company had examined him for insurance, without delivering a policy. It was stated the question was a material one and a false answer would change the attitude of the company as to the risk, and that it was error for the trial court to direct a verdict for plaintiff. Reference is made to the opinion for a complete

statement of the facts. The judgment was reversed and the cause remanded for a new trial. However, a rehearing was allowed as a result of which the cause was remanded with instructions to render judgment for the defendant. See 144 Kan. 224, 58 P. 2d 1131. It is observed that in neither of the two opinions was there any discussion of the above quoted statute.

We have not overlooked *Day v. National Reserve Life Ins. Co.*, 144 Kan. 619, 62 P. 2d 925, to which both appellant and appellee refer. It was decided on the question of good faith, the statute was not mentioned and it is not decisive here.

In *DePee v. National Life & Accident Ins. Co.*, 144 Kan. 751, 62 P. 2d 923, decided in 1936, the insured in his application for the policy stated that his occupation was that of a plasterer and that he had followed that occupation for fourteen years and he had been his own employer. Actually he had been an inmate of a penitentiary and applied for the insurance while out on parole. He was killed while resisting arrest while engaged in the commission of a crime. As a result of a trial his beneficiary recovered judgment and the defendant appealed to this court. In disposing of the appeal this court, without dissent, said:

"It is a matter of common knowledge that there is or may be a moral risk involved in the character of an applicant for life insurance. A man who has adopted a career of crime, and especially crime of violence, such as robbery, rum-running and the like, is not as safe a risk as a man who follows the honorable and useful occupation of a plasterer. DePee's predilection to a career of crime was involved in the very circumstances which culminated in his violent death, and the matters misrepresented in his application were material under the statute R. S. 1933 Supp. 40-418. (*Russell v. United Casualty Co.*, 123 Kan. 282, syl. ¶ 1, 255 Pac. 65; *Lodge v. Order of United Commercial Travelers*, 125 Kan. 26, 262 Pac. 598; *Klein v. Farmers & Bankers Life Ins. Co.*, 132 Kan. 748, 297 Pac. 730.)"

"This court holds that the misrepresentation in DePee's application touching the nature of his employment was material to the risk and rendered the policy void from its inception. The judgment is therefore reversed and the cause remanded with instructions to enter judgment for the defendant." (l. c. 754.)

*National Reserve Life Ins. Co. v. Humphreys*, 145 Kan. 373, 65 P. 2d 296, was an action to cancel a policy of insurance. The petition alleged that the insured had procured a policy of insurance for $2,500 on July 2, 1925; that at a later date he procured another policy of $1,000 on the strength of his representation set out in full in the opinion; that the company had paid the first policy; that the recitals in the application to obtain the second policy and to obtain

a reinstatement and relied on by the company were false. The trial court sustained the defendant's demurrer to the petition and wrote a memorandum opinion stating that in any event the matter was controlled by the above quoted statute. This court in its opinion noted absence of an allegation that the concealment of a surgical operation had anything to do with the cause of death and held the above quoted statute controlled, later saying in part:

"The diligence of counsel for the litigants has directed our attention to interesting decisions in more or less analogous cases—especially to *Hurt v. New York Life Ins. Co.*, 51 F. 2d 936; id. 53 F. 2d 453, where the circuit court of appeals for the tenth circuit characterized false statements in an application for insurance as conditions precedent which prevented the insurance contract from coming into existence in the first instance, and not mere misrepresentations which might defeat the policy. Whatever that eminent court says is always instructive and usually helpful. Here, however, in plaintiff's petition the alleged false statements in the insured's health certificate and application are alleged to be misrepresentations, not conditions precedent. Moreover, our statute so precisely covers the point that whether the allegedly false statements be characterized as conditions precedent or as misrepresentations, they could not affect the result in this case. (*Newton v. Insurance Co.*, 95 Kan. 427, 148 Pac. 619; *Galloway v. Insurance Co.*, 112 Kan. 720, 725, 212 Pac. 887; *Hayslip v. Insurance Co.*, 112 Kan. 189, 210 Pac. 188. See, also, 32 C. J. 1281-1284.)" (l. c. 376.)

In *Brown v. Metropolitan Life Ins. Co.*, 146 Kan. 300, 69 P. 2d 1110, we considered reinstatement of a lapsed policy, the reinstatement being procured on a written application stating that insured had not consulted a physician since issue of the policy. As shown by the opinion the answer was false. In an action on the policy, and on the appeal, the beneficiary sought to rely on the above statute. This court held it inapplicable. A review was made of authorities dealing with materiality of answers made in an application for insurance and of fraud in connection therewith. It was held the undisputed evidence showed false answers as to material matters and the judgment of the trial court for plaintiff was reversed and the cause remanded with instructions to render judgment for the defendant.

*National Reserve Life Ins. Co. v. Jeffries*, 147 Kan. 16, 75 P. 2d 302, was an action to cancel a policy. Reference is made to that opinion for a full statement of the facts and a review of authorities. Briefly stated the insured obtained a policy from the company in 1921. In June, 1933, he obtained a second policy by virtue of a certificate in which he stated he had not undergone any medical

or surgical treatment since a previous date. The proof showed the answer was false and that he had received treatment for hemophagia, chronic constipation and hypertension, and that he died of a hemorrhage. In its opinion this court stated the issuance of the policy without medical examination depended solely upon the representation as to good health, and had the representation as to good health not have been made a medical examination would have been made which would have disclosed the identical ailment of which insured died; that the matter misrepresented contributed to the event on which the policy became due, was material and rendered the policy void, citing the above statute and the Humphreys case noted above.

In *Jackson v. National Life and Acc. Ins. Co.*, 150 Kan. 86, 90 P. 2d 1097, the company defended an action for recovery on a policy of insurance on the ground that false answers were knowingly made in the application therefor, that defendant did not know the answers were false and would not have issued the policy if it had been informed. The questions and answers are set forth in the opinion. Insured had consulted a chiropractor for acute gastritis, a matter concealed by an answer made by her. She died of myocarditis. Attention was directed to the above quoted statute, and shortly stated, it was held there was no connection between the concealed matter and the cause of death, and the only question was whether the insured made answers fraudulently. This court held the answer was not a warranty and that good faith in making the answer was sufficient even though it was incorrect as a matter of fact. The judgment of the trial court allowing recovery was sustained.

Our attention is also directed to *Elliff v. Inter-State Business Men's Acc. Co.*, 153 Kan. 177, 109 P. 2d 92. The case involved an accident and health policy and the action was for recovery for disability resulting from accident. The application did not disclose the insured had consulted a physician during a named period. The proof showed that he had and the jury so found. Attention was directed to the quoted statute, and it was said there was no causal connection between the illness for which the insured had consulted the physician and the injury for which he sought recovery. It was further stated that although it was pleaded the answer affected the risk assumed, there was no proof thereon. The judgment of the trial court allowing recovery was affirmed.

Appellant directs our attention to *United States v. Depew*, 100 F. 2d 725. In April, 1931, the insured while a soldier in the army applied to the United States for a policy of insurance stating he was then in good health and that he had never been treated for any disease of brain or nerves, throat or lungs, stomach, liver, intestines and other specified parts of the body. A policy was issued effective as of May 1, 1931. In February, 1933, the director of insurance canceled the policy for fraud in the answers contained in the application. Omitting reference to intervening matter, plaintiff filed an amended petition seeking recovery on the policy. The United States answered that the policy was obtained by fraud on the part of the insured in making false answers in his application. Trial was had by the court and at the close of the evidence the United States moved for judgment. The court found for plaintiff and appeal followed. As shown in the opinion there was undisputed evidence the insured had been hospitalized on a number of occasions for difficulties connected with his lungs and hemorrhaged frequently until his death. We need not follow out the decision fully, leading to a conclusion that the untrue representations knowingly made were material as a matter of law. Under the circumstances the cause was remanded for a new trial. We note that the policy in question arose under the statutes of the United States; that no statute similar to ours as quoted above was involved, and that the case is not decisive here.

Appellant also directs attention to *New York Life Ins. Co. v. McCurdy*, 106 F. 2d 181, an action commenced in a district court of this state and removed to the federal court for trial which resulted in a judgment for plaintiff from which the company appealed. The opinion is long and cannot be reviewed at length. In his application for insurance the insured who was a doctor of medicine gave a negative answer as to whether he had ever consulted a physician or practitioner for any ailment or disease not included in his above answers. These previous questions and answers called for no answer that he was suffering from pain, tenderness and swelling of his right testicle. A policy was issued to him on April 2, 1937, and the uncontroverted evidence showed he died on December 15, 1937, of a cancer which had its origin in that testicle. Without detail it may be said the proof showed the falsity of the answer as to consulting a physician and that prior to making the above application the insured had been treated on a number of occasions

by various doctors for the trouble in the testicle. In the course of the opinion the appellate court referred to many of our decisions and stated that when fraud is established in obtaining a policy of insurance there can be no recovery notwithstanding the above quoted statute. In support the court cites a number of our decisions, and decisions from other jurisdictions, including *Hurt v. New York Life Ins. Co.*, referred to in *National Reserve Life Ins. Co. v. Humphreys*, supra. We shall not pause to review our decisions cited to determine whether or not they support the rather broad statement made by the court, for we have no doubt that under the evidence the misrepresentation was material and actually contributed to the event on which the policy became due and payable, and that under the circumstances the beneficiary could not rely on the above quoted statute.

The gist of appellant's argument that its demurrer to appellees' evidence should have been sustained and that the trial court erred in not directing a verdict in its favor is that the appellees' proof established that the insured returned false answers to questions as to whether she had consulted a physician for any other disease not included in her answers which did not refer to her reproductive organs, and as to whether she had consulted or been examined by or treated by a physician or practitioner within the past five years, and that had the company known of the cyst on her ovary, concerning which she consulted a physician, as stated in our review of the evidence, the company would not have issued the policy; that the matter was material to the issuance of the policy, and under our decisions dealing with "moral risk" it was not liable under the policy except for return of premiums, which it had tendered into court. In support it cites many of the cases reviewed above.

Answering the contention appellees direct attention to the fact that there was no evidence that the ovarian cyst or any other minor conditions from which the insured may have suffered and for which she had been examined or treated prior to her making application for the insurance contributed to her death which was caused by barbiturate intoxication, and they submit that as the defense of fraud raised by the appellant did not pertain to a misrepresentation actually contributing to the contingency or event on which the policy became due and payable, it was not material under the above statute, and that their evidence made a prima facie case entitling them to recover.

A review of the evidence makes it clear that there is no question but that when the insured, in her application, answered that she had not consulted or been examined or treated by a physician or practitioner, she knew the answer was false. It is equally clear, however, that the matter which was misrepresented and concealed. *i. e.*, that she had an ovarian cyst, did not actually contribute to the event on which the policy became due, for the evidence clearly disclosed her death resulted from barbiturate poisoning.

The statute above quoted is clear in its terms that no misrepresentation in the application for insurance shall be deemed material or render the policy void unless the matter misrepresented shall have actually contributed to the event on which the policy becomes due. It is true that this court in *Becker v. Surety Co.,* supra, did make an exception as to "moral risk" as set forth in syllabus ¶ 3 of that opinion which rule was followed in *DePee v. National Life & Accident Ins. Co.,* supra, and recognized at least indirectly in other cases. Upon a reconsideration this court has concluded that in view of the clear and explicit language of the statute, it was unwarranted in engrafting on that statute an exception the legislature did not see fit to include, and that it should follow the statute as written and hold, without engrafting an exception thereon, that the only misrepresentation made in obtaining a policy of life insurance which shall be deemed material is one which actually contributed to the event on which the policy becomes due, and that the Becker and DePee cases last referred to, insofar as they make "moral risk" an exception to the statute, should be repudiated and overruled, and that anything savoring of approval of "moral risk" as an exception to the statute in any other case should be disapproved.

We conclude the trial court did not err in ruling on appellant's demurrer to appellees' evidence, nor in refusing to direct a verdict in appellant's favor.

Appellant, directing attention to the fact the policy provided for double indemnity in the event of accidental death, contends there was no evidence of accidental death within the meaning of the policy. To arrive at that conclusion appellant is driven to contend that evidence, which it offered, was hearsay and should not be considered. We need not decide whether that may be done. We do not overlook that in appellant's answer it was alleged that the insured died as the result of taking excessive amounts of barbiturates.

Other·evidence included the statutory certificate of death showing insured died of barbiturate poisoning. This was competent evidence of the cause of death under *Jaques v. Commercial Travelers,* 104 Kan. 612, 617, 180 Pac. 200, and *Porter v. Metropolitan Life Ins. Co.,* 155 Kan. 521, 524, 127 P. 2d 444. In addition there was testimony of attending physicians that she had an overdose of barbiturates, became in a coma and died. It is here noted that appellant concedes that it failed in its effort to prove the insured committed suicide by taking an overdose of barbiturates.

There is no evidence that the insured was aware of what amount of the drug would produce death. Without repeating all the evidence as to dosages taken by the insured, we think it such the jury could properly infer that insured was in ignorance that the amount she took was a lethal dose and that her death was by accidental means. (*Spence v. Equitable Life Assurance Soc.,* 146 Kan. 216, 69 P. 2d 713.)

Under the evidence the overdose of the drug was taken either with suicidal intent or accidentally. Under the circumstances here the assumption would be unwarranted, but if it be assumed the evidence as to whether the taking of the drug was accidental or suicidal was so nearly balanced as to leave the answer in doubt, the presumption would be in favor of accident. (*Mutual Life Ins. Co. v. Wiswell,* 56 Kan. 765, 44 Pac. 996, 35 L. R. A. 258; *O'Brien v. Insurance Co.,* 109 Kan. 138, 144, 197 Pac. 1100; and *Muzenich v. Grand Carniolian Slovenian Catholic Union,* 154 Kan. 537, 119 P. 2d 504, 138 A. L. R. 818.)

Appellant's contention the appellees' proof did not establish death by accident cannot be sustained.

Appellant also contends that certain instructions to the jury were erroneous. With one exception the objections are predicated on its contention it could rely on "moral risk." In view of what has been said on that phase of the case, it becomes unnecessary to discuss the contentions made. Appellant also contends an instruction as to what constitutes an "accident" should not have been given "since there was no evidence of accidental death or a suicide." The pleadings made an issue thereon, there was evidence, and the objection is not good.

In view of what has been said, it follows that the judgment must be and it is affirmed.

THIELE, J. (dissenting): I. dissent from that portion of the foregoing opinion repudiating the rule as to "moral risk" first promulgated in *Becker v. Surety Co.*, supra, in 1919, and since recognized and followed until today. In the period of over thirty-four years since it was announced the legislature has met repeatedly. In 1927 it enacted a revision of our statutes pertaining to insurance (Laws 1927, Ch. 231) and made no effort to change the rule promulgated in 1919, nor since the decision in *DePee v. National Life & Accident Ins. Co.*, supra, in 1936, has it changed the rule. I think the rule is sound and should be adhered to and followed. To me, the instant case shows conclusively that there was concealment of facts material to the risk assumed by the company when it issued the policy, and a fraud which, if the truth had been disclosed, would have prevented issuance of the policy. The appellant's demurrer to the appellees' evidence should have been sustained.

WEDELL and PRICE, JJ., concur in the foregoing dissent.